PLEAS HODGE v. THE STATE.

No. 677.    Decided October 26, 1910.

**1.—Murder—Evidence—Conversation.**

Where, upon trial of murder, the evidence of the State was that the defendant said at a certain time and place that he was going to wear out his pistol over the head of the State's witness and have a settlement with deceased, it was reversible error not to permit the defendant to prove by a witness that the deceased and not the defendant made said remark; the defendant having denied making said remark.

**2.—Same—Evidence—Accidental Killing—Discharge of Pistol.**

Where, upon trial of murder, the defendant claimed that the pistol dropped to the floor and was thereby accidentally discharged, the shot taking effect in the body of the deceased, and the State had shown that the pistol was so constructed that it could not be fired in the manner claimed by defendant, it was reversible error not to permit the defendant to show that it could be made to explode in this manner.

**3.—Same—Charge of Court—Negligent Homicide.**

Where, upon trial of murder, the State's evidence excluded everything but a deliberate killing, and that of the defendant that the killing occurred as an accident, the court should not have charged on negligent homicide

**4.—Same—Continuance—Practice on Appeal.**

Where a case is reversed upon other grounds, the question of the overruling of the defendant's motion for continuance need not be considered.

Appeal from the District Court of Harrison.    Tried below before the Hon. W. C. Buford.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Beard & Davidson* and *George L. Huffman,* for appellant.—On the question of the court's refusal to permit the defendant to show that the language attributed to him was used by the deceased: Epson v. State, 29 Texas Crim. App., 607; Pratt v. State, 53 Texas Crim. Rep., 281, 109 S. W. Rep., 138; Hardin v. State, 55 Texas Crim. Rep., 631, 117 S. W. Rep., 974; Potts v. State, 56 Texas Crim. Rep., 39, 118 S. W. Rep., 535; 12 Cyc., 427.

Upon question of refusing defendant's testimony to show that pistol would fire by falling to the floor: Clark v. State, 38 Texas Crim. Rep., 30, 40 S. W. Rep., 992; Martin v. State, 51 S. W. Rep., 912.

On question of the court's error in submitting a charge on negligent homicide: Morris v. State, 35 Texas Crim. Rep., 313, 33 S. W.

Rep., 539; Brittain v. State, 36 Texas Crim. Rep., 406, 37 S. W. Rep., 758; Warthan v. State, 41 Texas Crim. Rep., 385, 55 S. W. Rep., 55.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for murder in the second degree with an assessed penalty of five years in the penitentiary. The deceased, Jethro Murphy, lived in a state of adultery with Addie May Harris, and they occupied the same room. There is evidence going to show that there was illicit relations between appellant and Lula Hunter, a sister of Addie May Harris. Appellant visited the house of the deceased Monday night and Tuesday night previous to the homicide on Wednesday night. Addie May Harris testified for the State in substance that appellant on the night of the homicide had been at the residence of herself and the deceased a short time and that after his arrival Andrew Fisher, Martha McKnight and Mable Thomas came. There was some whisky at the house and all the parties drank. None of them, however, were drunk except Andrew Fisher, and he had been drinking considerably before his arrival. Martha McKnight and Mable Thomas did not remain long. During the evening deceased played on a guitar and some one of the crowd challenged Andrew Fisher to dance. He declined and there is some evidence indicating he put it upon the ground that he was too drunk or some one of the crowd said that he was too drunk. After remaining awhile Andrew Fisher suggested to appellant that he was going and wanted appellant to go with him. Appellant suggested that if he would wait a moment he would go. Addie May Harris states that at that time she was sitting on the bed and appellant came up behind her or was standing behind her, and from this point shot over her shoulder or head at deceased, who was sitting on the trunk near a dresser; that she saw the pistol and turned to appellant, who grabbed her around the neck, but turned her loose because Andrew Fisher at this time ran back in the room. The indications were that Andrew Fisher at the time the pistol fired ran out of the house. Addie May Harris further testified that when Andrew Fisher came back into the room appellant was choking her; that appellant then turned her loose and went away. Appellant concedes that he had been to the residence of the deceased on Monday night, as well as Tuesday night, and that he had an understanding with the deceased to return to his house on Wednesday night for the purpose of trading pistols with him and for this purpose he had carried his pistol to the home of deceased. It is shown that the deceased had a pistol and that it was lying on the floor under a piece of furniture near where deceased was sitting. Appellant further shows that just as he got ready to leave, his pistol being loosely belted around him, the weight of it having pulled it down, he unbuckled the belt and pulled

it up so as to readjust and rebuckle it so that it would be convenient for him to carry and that when he unbuckled the belt it slipped out of his hand and the belt, scabbard and pistol all fell to the floor; that by reason of this fall to the floor the pistol was discharged, the shot taking effect in the body of the deceased and causing his death. The effect of this evidence is that the discharge of the pistol was purely accidental. He denied shooting the deceased intentionally and also denied having pulled the pistol out of the scabbard. Just immediately after the shooting, he testifies, that he went to the room of a witness, who lived nearby the home of the deceased, and in answer to questions from that witness stated that the pistol had fallen on the floor, was thereby discharged and he was afraid he had killed deceased. This witness corroborates the appellant in this statement. Appellant further shows that he was friendly with deceased, and testified that he had no purpose or intention of killing him and that he did not shoot at him. In this connection the State introduced evidence, through Addie May Harris, to the effect that appellant was out of humor with herself and the deceased, giving as a reason that his sweetheart, Lula Hunter, had been at the home of deceased and Addie May Harris at their instigation and that she had been brought there by them for the purpose of prostituting her body to other men. Appellant denied any conversation of this sort and also denied that there had been any illicit relations between himself and Lula Hunter. Also in this connection Addie May Harris testified that when appellant came to their house on Wednesday night he had a pistol belted around his waist, pulled it out and told the deceased that he came for the purpose of wearing the pistol out over the head of Addie May Harris and having a settlement with him; that he then had his pistol in his hand and so held it until he finished talking to the deceased. He then laid the pistol in a chair, where it remained until Mable Thomas and Martha McKnight came. When they entered the room, this witness testifies, appellant picked up the pistol and put it in the scabbard so that Mable Thomas could occupy the chair; that after a few moments he again took his pistol from the scabbard and said to the witness, "You know one thing, I came down here to have a settlement with Murphy and to wear this out over Adeline." He repeated this remark, but only used this expression once in the presence and hearing of Mable Thomas. When Mable Thomas heard this remark she replied, "You ain't going to do anything of the kind, because I am her auntie." This is the State's evidence, which is denied by witnesses for appellant. Addie May Harris was asked the following question: "Q. I want to ask you if it isn't a fact that instead of Pleas Hodge saying that I am going to wear this pistol out over your head and settle with Murphy, if it isn't a fact that this was the conversation, that Jethro Murphy was the one that used the language, that Murphy said that you cursed him the other night when he took you down there to that joint, and if Jethro didn't say that

if you don't quit cursing him he was going to wear the pistol out over your head and give you a good beating? 'A. No, sir, he didn't say anything like that—whoever says that tells something that is not so. I will say he didn't say so. He didn't say that in the presence of Mable Thomas and Martha McKnight.' " She denied this conversation upon her original cross-examination. She was subsequently recalled by appellant and questions again propounded to her for the purpose of impeachment. Mable Thomas and Martha McKnight were both introduced and by each of them it was proposed to be shown by the appellant, both as original and as impeaching testimony that the deceased said, "Addie May cursed me last night, and I took her down under the hill and gave her a good beating, and if she didn't quit cursing him he was going to take this pistol and wear it out over her head." Upon objection by the State this evidence, both as original and impeaching, was excluded. The evidence of the State in regard to this matter was that Pleas Hodge while in the house said he was going to wear his pistol out over the head of the witness Addie May Harris and then have a settlement with the deceased. The defendant by himself and these witnesses denied making this statement and offered to prove that the deceased made the remark above quoted and which was excluded by the court. The bills show that this was a part of the same conversation—occurred in the room while all of these parties were present. We are of opinion this evidence was admissible as original testimony under our statute. Appellant was permitted to prove that he did not make the remarks imputed to him, but was denied the right to prove before the jury that the deceased made the remarks he sought to show by the rejected testimony. The theory of the State was that appellant was indignant and mad at the deceased and Addie May Harris because they had induced Lula Hunter to visit their house for the purpose of having intercourse with other men, and for this reason he was at the house of the deceased armed. His theory was that his mission was a peaceful one and that he was friendly and always had been friendly with deceased, and that he visited the residence of the deceased on the night of the homicide with no intention of having any trouble with him and not actuated by the reasons imputed by the State, and that he was there for the purpose of trading pistols with the deceased, and during these conversations, appellant offered to prove, deceased was out of humor with his mistress, Addie May Harris, and was threatening her on account of the fact that she had cursed him on some previous occasion. This testimony was, therefore, clearly admissible under the circumstances stated and the court was in error in rejecting it.

Appellant claimed that the pistol and scabbard dropped accidentally to the floor, was thereby discharged, the shot taking effect in the body of the deceased, which proved fatal. The evidence shows that the pistol was a 38-caliber Smith & Wesson. It was further shown

for the State that the pistol was so constructed that it could not be fired in the manner stated by appellant; that the hammer rested upon a "safety notch" and could not be fired by being struck a blow and therefore if the hammer struck the floor, being on the safety notch, it could not reach the cartridge and thereby explode it. The pistol was exhibited before the jury and it was explained and shown to them how the hammer would catch on the safety notch and could not be fired while in this condition. To meet this appellant offered evidence to the effect that an experiment had been made with the pistol by fastening it in a secure place and striking the hammer while on the safety notch a slight blow with a hammer, and that this blow did cause the hammer to strike and explode the cartridge. The court excluded this offered testimony on the ground that the experiment was not done in the same way appellant claimed that the shot was fired, that is, by striking the floor, and it also appears that there was objection to dropping it on the floor while loaded for fear of a discharge of the pistol and that an accident might occur by reason of the discharge. The State's evidence was sufficiently strong in extent to leave the impression upon the mind of the jury that the pistol could not be exploded while the hammer was upon the safety notch and that external force applied to the hammer while upon the safety notch could not explode the cartridge. Upon another trial we think the testimony offered by the defendant should go to the jury. The State's evidence was intended to impress the minds of the jury that while the hammer of the pistol was upon the safety notch it could not be made to explode a cartridge. If appellant could show in any legitimate way that although the hammer was on a safety notch it could be made to explode a cartridge he certainly would have a right to meet the State's case. Appellant's theory of accident was largely dependent and contingent upon the fact that the pistol was discharged by reason of the force applied to the hammer of the pistol when it struck the floor. If it was impossible from the force of the fall on the floor to explode the cartridge it went directly to the truthfulness of his testimony as well as the entire accidental theory of the defendant as presented to the jury. The State having attacked this theory of appellant he had the legal right to corroborate or strengthen it with any legitimate testimony. Clark v. State, 38 Texas Crim. Rep., 30, 40 S. W. Rep., 992; Martin v. State, 51 S. W. Rep., 912.

The two contentions presented by the evidence was, first, murder in behalf of the State and an accidental discharge of the pistol by the appellant. If appellant shot the deceased, as the testimony of Addie May Harris would indicate, he would be guilty of murder. If, as appellant's testimony shows, the pistol dropped on the floor accidentally and was discharged he was entitled to an acquittal. The two propositions are strongly put by the evidence and are the main

issues in the case. Upon the facts which are substantially stated the court charged the jury with reference to negligent homicide of both degrees. We are of opinion that negligent homicide is not raised by any of the facts. The State's evidence excludes everything but a deliberate killing. The defendant's evidence shows the killing occurred as an accident. There was no negligence, as we understand the evidence, on the part of appellant unless it be found in the fact that when he unbuckled the belt from around his body he let it slip out of his hands. This was the manner in which the pistol reached the floor if it was attached to the belt. We do not believe this evidence was sufficient to bring the case within the definition of negligent homicide in either degree.

An application was made for continuance. We will not enter into a discussion of this matter in view of the reversal upon the other questions, as the testimony may be presented upon another trial and in any event a subsequent application will come in a different light from the one presented in this record, if one should be made.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*