GEORGE McCRAY v. THE STATE.

No. 1301. Decided November 1, 1911.

1.—Negligent Homicide—Charge of Court—Ordinary Care.

Where, upon trial of murder, the evidence developed that the transaction was either negligent homicide or accidental killing, and further showed that the defendant believed that the gun was unloaded, etc., it was reversible error to refuse an instruction, that if the defendant did not know and in the exercise of ordinary care and caution could not know the gun was loaded at the time of the killing to acquit him.

**2.—Same—Charge of Court—Accidental Killing.**

Where, upon trial of murder, the evidence raised the issue of accidental killing a failure to submit a charge thereon was reversible error.

Appeal from the District Court of Harrison. Tried below before the Hon. W. C. Buford.

Appeal from a conviction of negligent homicide; penalty, a fine of $100.

The opinion states the case.

*Beard & Davidson,* for appellant.—On question of court's charge on negligent homicide: Thomas v. State, 112 S. W. Rep., 1049.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of negligent homicide, his punishment being assessed at a fine of $100.

The State's theory is that the appellant shot and killed Green Edwards without provocation and without anything being said and done between the parties beforehand showing any indication to commit the act, and that it was a sudden, intentional shooting. All of the evidence shows that appellant and the deceased, up to the time of the killing, had never had trouble or difficulty of any sort, but had been and were very friendly, as were their families. The killing occurred at the house of John McCray, Sr., appellant's father, where Green Edwards and his brother, Warren Edwards, had gone on a social call and for social pleasure, etc. The theory of the defendant was that the killing was an accident and defendant's witnesses all testified to facts establishing that fact. This evidence shows that Warren Edwards, Green Edwards, and the McCrays had always been on the most friendly terms; that the Edwards boys came to the house of John McCray, father of the McCray boys, on the night of the killing, reaching there just after sunset and remained there, having a pleasant time until about 11 o'clock at night, at which time Warren Edwards and Green Edwards were to start home. The McCray boys were to attend them part of the way. After Green Edwards had gotten up to start home, appellant and Austin McCray, and Green Edwards, got to pranking with a gun belonging to and in the hands of Green Edwards, which he had brought to McCray's with him. Warren Edwards was "pranking and playing with Mary McCray," a sister of appellant; Warren Edwards had a knife, and as the witnesses say, was pranking with her with the knife open, at which time appellant picked up a gun sitting in the corner, which he thought and believed was unloaded, and held it up in a playful manner; that as he started to let the hammer down, it slipped from his thumb, accidentally discharging and killing Green Edwards, who was standing near the door. It is further shown that this gun had been used by appellant in the morning of that day, hunting. He thought and believed that he had unloaded the

gun when he came home and was not aware that there was any load in the gun. The gun was not to his shoulder at the time, but he was holding it in his hand, and in letting the hammer down, it slipped from his hand. The evidence for the defendant on this point is further to the effect that he began crying and stated that it was an accident, etc. It may be seriously questioned whether negligent homicide was in the case, but, we think it is not to be questioned that the evidence is strong to the effect that the question of accidental shooting was in the case. To say that it was not, would be to ignore all the evidence introduced by the defendant.

The court was requested to charge the jury as follows: "On the question of negligence, you are instructed that if the defendant did not know, and in the exercise of ordinary care and caution, did not know the gun was loaded at the time of the killing, you will find the defendant not guilty." This charge was not given, nor any charge by the court submitting this theory of the case. We are of the opinion that the facts called for this charge. The court submitted, in a general way, a charge on negligent homicide upon the theory that if the appellant did not use such care and prudence as an ordinary, prudent person would, under the same circumstances, then he would be guilty; and further charged the jury that if, however, they should find that the defendant was not negligent, "that is, that his acts and conduct in the respects above set out, were such as a person of ordinary care and prudence would have done under the same circumstances, then if you so believe, you will find the defendant not guilty." While the statute lays down the general rule that the care and prudence, as exercised by the accused, should be such as an ordinary person, or person of ordinary care and prudence would exercise, yet, where this was done, and if, as a matter of fact, the jury should find that he did use ordinary care, and that he did not believe the gun was loaded, they would not find him guilty of negligent homicide. We are of opinion that under the circumstances, this charge should have been given. If, as a matter of fact, the appellant did not know the gun was loaded, and thought he had taken the cartridges from the gun, as was always his custom under such circumstances, then appellant was clearly entitled to the charge requested. He also raises the question that the court failed to charge on the theory of accidental killing, or an accidental discharge of the gun. We are of the opinion that the facts in this case raise this question squarely. Our statutes expressly provide, article 45, Penal Code, that "no act, done by accident, is an offense, except in certain cases specially provided for, where there has been a degree of carelessness or negligence which the law regards as criminal." Article 46: "No mistake of law excuses one committing an offense; but if a person laboring under a mistake, as to a particular fact, shall do an act which would be otherwise criminal, he is guilty of no offense." Now, if appellant not intending to shoot the gun, but was playing with it, and believing it was unloaded and the hammer slipped out

of his hand and fired the gun, he was entitled to a charge on accident. This question was fully raised by the testimony of appellant. In fact, appellant relied upon this theory. How the question of negligence in the hammer slipping from his hand should cut off appellant from a charge on accidental homicide, is not clear. Had he pointed the gun at the deceased and pulled the trigger, believing the gun was unloaded, there might be a question of negligent homicide, but under his theory, it was an accident. Appellant was holding the gun, not pointing it towards deceased, and was letting the hammer down when it slipped from his hand. This was not negligence, but an accident, if it occurred as stated. The court should not have resolved these matters against the accused, but in his favor, submitted the issue of accident.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*