JOSE GARCIA MALDONADO ET AL. v. THE STATE.

No. 2411.   Decided April 23, 1913.

**1.—Assault to Murder—Charge of Court—Accidental Killing.**

Where, upon trial of assault with intent to murder, the evidence raised the issue of an accidental or unintentional killing, the court should have submitted a proper charge thereon, and there was reversible error.  Following McCray v. State, 63 Texas Crim. Rep., 522, and other cases.

**2.—Same—Charge of Court—More than One Defendant.**

Where, upon trial of assault to murder against two defendants, the court charged the jury to convict both defendants if they should find that either of them made the assault with intent to kill, the same was reversible error.  Following Tittle v. State, 30 Texas Crim. App., 597, and other cases.

**3.—Same—Evidence—Other Transactions.**

Where the record showed on appeal that defendant's codefendant had fled, and it was not shown that he was in any way connected with the shooting or assault, but that he fled as soon as the pistol was fired, it was reversible error to admit in evidence testimony that the next day after he left it was discovered that two horses belonging to the owners of the ranch were gone.

**4.—Same—Evidence—Motive.**

Upon trial of assault to murder, it was error to admit testimony that a third party had declined to lend one of the defendants some money which she stated belonged to the party injured, without showing that this matter entered into the difficulty.

Appeal from the District Court of Brooks.   Tried below before the Hon. W. B. Hopkins.

Appeal from a conviction of assault to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. T. Canales* and *E. C. Gaines,* for appellant.—On question of admitting testimony on motive: Monson v. State, 63 S. W. Rep., 647.

On question of failure to charge accidental killing: Cases cited in opinion.   Phillips v. State, 22 Texas Crim. App., 139; Golin v. State, 37 Texas Crim. Rep., 90; Price v. State, 65 S. W. Rep., 909; Barkman v. State, 52 S. W. Rep., 73.

On question of court's failure to limit evidence of motive: Pedro De Leon v. State, recently decided; Davidson v. State, 22 Texas Crim. App., 372; Morrison v. State, 40 Texas Crim. Rep., 473.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellants were convicted of assault to murder, their punishment being assessed at two years confinement each in the penitentiary.

On the 5th of May appellants, Jose Garcia Maldonado and Pedro Garcia Maldonado, were working as hands on the ranch of J. P. Reed. On the same ranch and at the same time Victoriano Garcia Maldonado, Jesus Lopez, Ramon Estrada, and a Mexican woman, Antonia Ramirez, were also employed on the ranch, the woman being the cook. She had a son with her ten years of age. These are all of the persons who were on the ranch at the time of the difficulty out of which grew this prosecution. The two defendants are brothers, Jose Garcia being older than Pedro. Victoriano Garcia Maldonado was brother of the two defendants, and Lopez their cousin. Ramon Estrada had been working upon the ranch for eleven years, and in the absence of Mr. Reed acted as foreman. Antonia Ramirez had been cook, residing on the ranch about two years. The two defendants and Victoriano Garcia Maldonado and Lopez had been upon the ranch about six months. Estrada is the alleged assaulted party. His testimony is to the effect that on Sunday evening about 4 o'clock Pedro returned from the Rendado. Estrada had loaned Pedro a horse to ride to the Rendado. Pedro upon his return inquired if there was anything in the house to eat. Estrada answered in the affirmative, and as they were going in the house Jose Garcia, one of the defendants, remarked to Estrada he was a scoundrel, and that he, Jose, was going to kill a Mexican or American before he left there. There was a pistol lying on the sewing machine. Jose picked up the pistol and later fired at Estrada. The ball entered his hand and came out at or near the elbow. He further testified at the time the pistol was pointed at him Pedro caught his arm from behind and held him, and immediately after the shot the cook came in. This witness testified also that these Mexican boys had been working at the ranch together and that no friction or ill-feeling or unkind words had occurred between himself and any of them. To use his express words he says: "I had no trouble with them and do not know why Jose did the way he did. I had no conversation and no difficulty with him before. The day before I did not use any abusive language to him and he had used no abusive language to me before that." This is substantially the State's case. Pedro, Jose and Victoriano Garcia Maldonado, the only other witnesses who were present at the time of the trouble, also testified that no ill-will had ever existed between any of them and Ramon Estrada. That on Sunday evening they were all leaving their meal with Jose in front, Victoriano next, then came Estrada with Pedro behind. A pistol

belonging to Mr. Reed, the owner of the ranch, was lying on the end of a sewing machine standing in the door of a side room just off from the door where they were going out. Jose, the boy who had the pistol in his hand when it was fired, had seen a pistol but had never handled one, and out of curiosity picked this one up and was handling it, letting the hammer up and down, when the others came out with Victoriano in front, Ramon Estrada, the injured party, immediately behind him, Pedro bringing up the rear. When Pedro, the elder of the boys, saw Jose with the pistol he told him to put it back, but Jose kept handling it, and in a moment it fired. The ball passed sufficiently close to Victoriano to scorch his clothes and powder-burn his face; passing through the arm of Estrada, it struck Pedro in the face. When this occurred Victoriano took the pistol out of Jose's hand and put it up. Nothing was said by Jose at the time. Jose, testifying, said: "I was with my face towards the others, but I don't remember just exactly how I held the pistol then. The pistol then went off when I was examining it. I had never seen the pistol before. I had never owned or seen a pistol before. Before this I had been living on the Sabinas river near the City of Guerrero in Mexico. After the shot was fired I placed the pistol back where it had been. At the time I saw that my brother had been powder burned in the breast, and I noticed that Ramon Estrada was wounded; I didn't know just where he was wounded, but I saw that he was groaning and saw from that that he was wounded, and I also saw my brother with his hand up to his chin and apparently wounded. Nothing was said before this shot was fired. My brother, who is also my compadre, told me to let the pistol alone, that a shot might go off. That was as soon as he saw me with the pistol, and at that moment the shot was fired. The woman cook came and took Ramon away. . . . Just as I reached for the gun my brother Pedro told me to let that gun alone lest a shot might go off. Victoriano was a little behind from me, but was really nearer to me than Pedro was. I picked up the gun nevertheless. I was handling the pistol and turned around. I cocked the pistol and lowered it two or three times. I cocked it with my thumb and let down the trigger with my fore finger two or three times. Before that time I had never seen a pistol. I had seen them some time but I had never handled one." He says: "It is not true that when I pulled that gun and cocked it and threw it down on Ramon that he threw up his left hand and that my brother Pedro grabbed him from behind. That is not true." There are other facts tending to show accident.

The court submitted the theory of the State, but did not submit the theory of the defendants, that is, the pistol went off accidentally and the shooting was unintentional. It is deemed unnecessary to review the facts further in this connection. This evidence called for a charge on accidental discharge of the pistol. This matter was preserved in the trial court and is properly presented here for revision. This was error. The court should have charged this theory of the case. Calhoun v.

State, 71 S. W. Rep., 279; McCray v. State, 63 Texas Crim. Rep., 522; Hodge v. State, 60 Texas Crim. Rep., 157.

The court gave this charge: "If from the evidence you are satisfied beyond a reasonable doubt that the defendants, Jose Garcia Maldonado and Pedro Garcia Maldonado, or either of them, on or about the time charged in the indictment, in the County of Brooks and State of Texas, with a deadly weapon, and with malice aforethought, did assault the said Ramon Estrada with intent then and there to kill and murder him, by the means charged in the indictment, then you will find the defendants, or either of them, guilty of an assault with intent to murder, and so say by your verdict," etc. Exception was reserved in the trial court to this and again presented to this court as error. This charge is not correct. Under this charge the jury was authorized to convict both defendants if they should find that either made the assault upon Estrada with intent to kill him. This charge is, without discussion, erroneous. Tittle v. State, 30 Texas Crim. App., 597; Hays et al. v. State, 30 Texas Crim. App., 472.

Jesus Lopez, when the shot was fired, immediately left the ranch and had not been heard of or located at the time of the trial, which occurred some time subsequent to the trouble at the ranch. There is no evidence connecting Lopez with the shooting in any manner. He was present at the time, and when the pistol fired he fled, and so far as the record is concerned has not ceased his flight. The next day it was discovered that two of Mr. Reed's horses were gone. The disappearance of Lopez and the fact that the horses were ascertained to be gone the next day seems to have been relied on by the State to show that Lopez committed theft of the horses. Whether this be true or not, this evidence, we think, was not admissible against appellants. That occurred after the shooting. Appellants were in no way connected with it, nor was it sought to connect them with it. This matter while excepted to in the statement of facts was not brought forward in bill of exceptions, and is so presented perhaps under the decisions it is doubtful if it is reviewable. Be that as it may, as the case has to be tried again we call attention to the fact that this testimony was not admissible, and appellants' exception ought to have been sustained.

There is another proposition in the case submitted for reversal. The woman, Antonia Ramirez, was permitted to testify that she had $130 in her stocking which she kept in her room, and that one of the defendants had seen this money prior to the homicide and wanted to borrow $15 of it, which she declined to lend him, stating that it did not belong to her but that it did belong to Ramon Estrada. This was a few days prior to the shooting. This matter is presented about as that with reference to the flight of Lopez and the disappearance of the horses. This had no connection with the shooting. We suppose this was introduced on the theory of motive. It is not shown to have entered into the trouble, if, as a matter of fact, the shooting was intentional. We men-

tion this also so that upon another trial this error may not get into the case.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*