On Request for Leave to File Second Motion for Rehearing.

HAWKINS, J.

Appellant requests leave to file second motion for rehearing. No new questions are presented. It is simply again urged that the accomplice witness was not sufficiently corroborated. The evidence of Canady, the party to whom the check was passed by appellant, and the evidence of Dr. Fuller, would have supported the conviction in the absence of the testimony of the accomplice. Under such circumstances we can see no ground for appellant's further contention.

The request for leave to file second motion for rehearing is denied.

## VASQUEZ v. STATE.

No. 14669.

Court of Criminal Appeals of Texas.

Jan. 13, 1932.

Rehearing Denied Oct. 5, 1932.

D. Storms, of El Paso, for appellant.

Lloyd W. Davidson, State's Atty., of Austin, for the State.

CHRISTIAN, J.

The offense is negligent homicide of the second degree; the punishment, confinement in jail for six months.

Deceased, Antonio Trujillo, was a laborer engaged in digging a ditch in a street in the city of El Paso. The point where deceased was at work was a few feet out from the curb, and the excavation made was about five inches below the surface of the street. It was charged in the indictment, in substance, that appellant struck deceased with a truck while he (appellant) was driving said truck at a rate of speed in excess of twenty miles per hour. In support of the allegation as to the speed of the truck, witnesses for the state who were working with deceased testified that appellant was driving the truck thirty-five to forty miles an hour. Appellant and other occupants of the truck testified that the truck was not being driven in excess of twenty miles an hour. The testimony for the state showed that those working in the street had placed a red flag in plain view in order to warn drivers of cars that men were working in the street. These witnesses testified that the truck knocked the flag down. Appellant's witnesses denied that there was a red flag in sight. It appears from the testimony that the front part of the truck passed deceased, and that he was struck on the head by the rear portion of the truck. The body of the truck extended out over the wheels. One of the witnesses for the state testified that he saw the truck coming down the street at the rate of thirty-five or forty miles an hour, but that deceased apparently did not have time to get out of the way. The skull of deceased was fractured, and he died shortly after being hit. Appellant testified that it did not appear to him that there was any likelihood of striking deceased with the truck when he drove down the street.

█ It appears from bill of exception No. 1 that there was an ordinance of the city of El Paso requiring those working on the streets to erect rails in order to safeguard themselves. It also appears from the bill of exception that it was the custom in El Paso for those making excavations in the streets to erect rails around the place where the work was being carried on. Appellant offered the ordinance in evidence, and sought to prove the custom relative to the erection of rails. Upon objection by the state, the court declined to permit the proof to be made. However, the court did permit witnesses to testify that there were no rails around the excavation, and permitted appellant's witnesses to testify that there was no red flag visible. In view of appellant's testimony, we think the court was warranted in rejecting this proof. We quote from appellant's testimony as follows:

"I saw Antonio Trujillo (deceased) before I got to where he was. I saw him about forty or sixty feet ahead. He was about four feet from the curb, outside of pavement. As I saw him I steered the car out a little to the left. The car was going almost to front, and I turned my wheels to the left. When I got near him I was to the left of him. The steering wheel is on the left hand side. I was on the left hand side. It is a left hand drive. The wheels on the right hand side of the car were about three or four feet from Trujillo when we passed. The main body of the truck extends a little beyond the wheels. I have no idea how far. The body of the truck extends about six or eight inches over the wheels. These uprights that run along the side are the farthest extension on the truck. As I went by the rear end of the wheel there was about two feet from the hole where he was standing. The big wheel of the right wheel of the truck was about two feet from the hole. I did not think that there was any danger of hitting him, I did not go close enough. I do not know whether he was working with his pick or what he was doing, I just saw him bending down. I did not see if he raised up with his pick as the rear end of the truck came along. I did not see him after I went by, I was looking to the front. * * * If I let the car go straight ahead to him, I would hit him, and I took my truck to the middle of the street."

It is apparent from appellant's testimony that he did not contend that he was unaware that deceased was working in the street. On the contrary, he said he saw deceased some sixty feet away in the street, and that he was "bent over." Appellant did not say he thought deceased was a pedestrian in the act of crossing the street. He did not testify that he was not aware that men were working in the street at the place in question. Proof of the ordinance and custom to which reference has been made would, under appellant's testimony, have shed no light on the question as to whether appellant operated the truck with the degree of care and caution that a person of ordinary prudence would have used in like circumstances.

█ The contributory negligence of the person killed does not constitute a defense to a prosecution for negligent homicide. We quote from Ruling Case Law, vol. 2, p. 1212, as follows: "The rules of law concerning contributory negligence as a defense in civil actions for damages for personal injuries have no application to homicide cases for criminal negligence in operating an automobile. The decedent's behavior is admissible in evidence, and may have a material bearing upon the question of the defendant's guilt, but if the culpable negligence of the latter is found to be the cause of the death, he is criminally responsible whether the decedent's failure to use due care contributed to the injury or not."

In Corpus Juris, vol. 29, p. 1155, the rule is stated as follows: "The contributory negligence of the person killed, although it may be a defense to an action for a private in-

jury resulting from homicide, does not constitute a defense to a prosecution for homicide, nor is it any answer that the criminal negligence of others than defendant contributed to the death. However, decedent's conduct may show that defendant's act was not the cause or was not, under the circumstances, negligence."

The court instructed the jury, among other things, that before appellant could be convicted they must believe beyond a reasonable doubt there was an apparent danger of causing the death of deceased by striking and colliding with him. Appellant presented to the court a special charge which read as follows: "To constitute this offense of negligent homicide there must be an apparent danger, from the standpoint of the defendant, of causing the death of the person killed or some other person and if you do not believe beyond a reasonable doubt that at and before this occurrence complained of, it appeared to the defendant that there was danger (from what he was doing) of causing the death of deceased or some other person, you will acquit him."

We think the court was warranted in refusing to submit the foregoing instruction. The opinion is expressed that it embodies an incorrect proposition of law. We do not understand that the jury, in determining whether there was apparent danger, are bound to view the situation from appellant's standpoint. Article 1232, P. C., provides: "To constitute this offense there must be an apparent danger of causing the death of the person killed or some other."

In Ladd v. State, 115 Tex. Cr. R. 355, 27 S.W.(2d) 1098, 1100, Judge Lattimore, speaking for the court, said: "The operation of a car where other people are upon a highway, at such rate of speed [in excess of that permitted by law], might be deemed by a jury an act which involves apparent danger."

 We find in the record some bills of exception containing objections to the court's charge. It does not appear that these objections were in writing, as required by statute (Rev. St. 1925, art. 2237).

Failing to find error, the judgment is affirmed.

. PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

On Motion for Rehearing.

HAWKINS, J.

 Appellant's insistence that the verdict should not be permitted to stand under the facts has made another review of the evidence necessary. Some conflict in the testimony upon certain points is discovered, but that only raises issues of fact which of necessity the jury must settle. This court cannot say that the verdict finds no support in the evidence.

 Regarding complaint at refusal of a special charge which sought to have the jury told that the danger must be apparent when viewed from the standpoint of accused, we make the following observations: In Morris v. State, 35 Tex. Cr. R. 313, 33 S. W. 539, the facts show that Morris was drunk and was driving his wagon at a dangerous rate of speed. In the wagon with Morris was a man named Self who was either thrown from the wagon, or became frightened and tried to get out of the wagon and was killed. The trial court was requested to give a charge to the effect that, unless Morris was "conscious" that his act of rapidly driving the wagon would likely endanger the life of Self or some other person, an acquittal should result. The charge was refused. In passing upon the question thus presented, this court said in substance that it did not believe the facts of the case required the court to give the special charge asked, hinging accused's guilt on the consciousness on his part that his acts were then endangering the life of deceased; that the facts showed that deceased was riding in accused's wagon, which accused drove in a furious and rapid manner. The court held that under such circumstances accused was charged with notice that his acts did endanger the life of the deceased. That holding is in line with what was said again in the opinion on rehearing in Van Arsdale v. State, 94 Tex. Cr. R. 169, 249 S. W. 863, modifying language which had been used in Worley v. State, 89 Tex. Cr. R. 393, 231 S. W. 391.

It was not our purpose to say either in Ladd v. State, 115 Tex. Cr. R. 355, 27 S.W. (2d) 1098, or in the original opinion in the present case, that in determining whether there was "apparent danger," as referred to in article 1232, P. C., the situation should be viewed from the jury's standpoint. The jury might have facts before them making to them "danger apparent," which facts might have been wholly unknown to the party causing the killing. The law regarding the matter, as we understand our decisions, may be stated thus: There would be "apparent danger" in contemplation of article 1232, P. C., if the circumstances were such that (1) the danger at the time was "obvious" (Van Arsdale v. State, 94 Tex. Cr. R. 169, 249 S. W. 863); or (2) if an ordinary person in possession of his normal faculties, and exercising that degree of care which an ordinarily prudent person would exercise under circumstances surrounding accused, would have realized that there was danger of killing some

one (Van Arsdale v. State, 94 Tex. Cr. R. 169, 249 S. W. 863).

Believing the case was properly disposed of in the original opinion, the motion for rehearing will be overruled.