## ALVIE E. JOHNSON V. STATE.

No. 25227. April 25, 1951.

Hon. John Snell, Jr., Judge Presiding.

*Chas. E. Kamp,* Houston, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

This is a conviction for negligent homicide of the first degree; the punishment, six months in jail.

The lawful act which appellant was alleged to have been committing was that of driving a truck and trailer upon a street of the city of Houston. The negligence of the appellant was alleged to be: (1) the failure to guide the truck away from the automobile in which deceased was riding, as a person of ordinary prudence would have done under like circumstances, (2) the failure to keep this truck and trailer under proper control by reason of its operation at a fast rate of speed, the roadway being then and there slick and wet and rain falling thereon, (3) the failure to keep a proper lookout for the automobile in which deceased was riding, (4) the failure to slacken and reduce the speed of the truck.

The sufficiency of the evidence is attacked.

There were no eye witnesses to the transaction. No witness was able to give an account as to the relative position of the respective vehicles at the time of or just prior to the collision.

So far as we have been able to ascertain, the following appears to be a fair statement of the facts:

Appellant, in a truck with trailer attached, was traveling south on Fulton Street in the city of Houston when an automobile, also being driven south and about fifteen feet ahead of the truck, turned right, with no prior warning hand signal, into the first of two adjoining parking lots. As the driver of the automobile slowed his car to make this turn and the car's stop light flashed, appellant applied his brakes. This, on a street slick from recent rain and unfinished resurfacing, caused the trailer to skid and jack-knife around and into the right side of the truck and into a ditch on the right side of the street.

It appears there is a gradual thirty-degree westerly curve in the street, precluding an unobstructed view of the street ahead. One of the state's witnesses, a police officer, who was

also driving south about four blocks to the rear, testified to hearing the crash and seeing the top of the truck turning east to the driver's left. Not until he had "partially rounded the curve which is there" did he see the deceased's car, then in the opposite ditch.

After the accident, with his skull fractured, deceased was found unconscious in an automobile ditched across the street.

A witness testified that prior to the accident, as he looked out a window in his home on Fulton Street to see if it had stopped raining, he had seen the truck but no other vehicle. He testified: "This truck was going about medium. I did not see the accident happen. . . ." He further testified that after hearing the crash and going to the scene he "saw Mr. Sciacco (deceased) in this automobile. That is all I know about it." (Parentheses supplied.)

Appellant testified that it was "possible" for the automobile he was "in collision with, to have *come* out of the second parking lot"; that ". . . I had never seen the car before and at this time was when that I learened that it was involved in the collision."

A police officer testified:

"I took him (appellant) to the police station a few minutes after I was trying to locate a car which he had described, and he was going to assist me in finding that car which he was following and which he believed to be *paried* on the parking lot at the time of the collision. . . He wasn't under arrest . . . . we couldn't establish the point of impact." (Parentheses supplied.)

The record does not disclose the result of the attempt to find the automobile.

Another officer testified:

". . . . the defendant was driving on his right-hand side of the road, going south. I found no damage on the left-hand side of the truck, other than on the trailer, at the rear . . . When I got there, I found this truck and this trailer jack-knifed . . . The trailer was not across the street; it was about 10 feet over on Fulton . . . I did not see how the damage occurred to that automobile; I didn't see it."

No bills of exception accompany the record.

26

The disposition of this case appears to be controlled by the provisions of Chapter Fourteen, Homicide by Negligence, Art. 1232, P. C., which reads as follows:

"To constitute this offense there must be an apparent danger of causing the death of the person killed or some other."

By this statute, in order to constitute the crime of negligent homicide an apparent danger of causing the death of the deceased or some other person must appear from the negligent acts of the accused.

Whether apparent danger does, in fact, exist is not to be determined from the viewpoint of the accused, alone, but rather from the facts as a whole. Vasquez v. State, 121 Tex. Cr. R. 478, 52 S. W. 2d 1056.

Examining the instant facts in the light of the statute and rule stated, we are unable to point to any one fact or set of facts which would authorize the conclusion that in the performance thereof there was an apparent danger of killing the deceased or some other person. Such being true, we are not required to make the further determination as to whether any acts showing an apparent danger were acts here charged as negligence. The conclusion expressed finds support in the case of Johnson v. State, 151 Tex. Cr. R. 313, 207 S. W. 2d 871.

Believing the facts insufficient to support the conviction, the judgment is reversed and the cause remanded.

Opinion approved by the court.