### JIM McPEAK v. THE STATE.

#### No. 4125.  Decided June 21, 1916.

**1.—Murder—Evidence—Irrelevant Testimony.**

Upon trial of murder, it was reversible error to admit testimony to the effect that sometime prior to the homicide, but on the same day, defendant at the request of his friend had gotten a bottle of bitters from him; it not being shown that this matter had any connection with the transaction and was between defendant and a third party who was not connected with the homicide. Following Hodges v. State, 73 Texas Crim. Rep., 378, and other cases. Prendergast, Presiding Judge, dissenting.

**2.—Same—Negligent Homicide—Accidental Killing.**

Where, upon trial of murder and a conviction of said offense, the evidence raised the issue of accidental and negligent homicide and both issues were embraced in the same charge, the same was reversible error as the issue of accidental homicide should have been submitted unfettered and untrammeled with conditions requiring the jury to find that negligent homicide was not in the case before they could acquit on the accidental theory. Following Hamilton v. State, 64 Texas Crim. Rep., 175, and other cases. Prendergast, Presiding Judge, nonconcurring.

**3.—Same—Charge of Court—Murder.**

Where, upon trial of murder and a conviction of that offense, the issues of murder, negligent homicide, and accidental killing were raised by the evidence, there was no error in the court's charge submitting the issue of murder. Davidson, Judge, dissenting.

**4.—Same—Mistake—Charge of Court—Negligent Homicide in the First Degree.**

Where, upon trial of murder and a conviction thereof, the evidence raised the issue of mistaken and negligent homicide of the first degree, the same should have been submitted by proper charges. Prendergast, Presiding Judge, nonconcurring.

**5.—Same—Argument of Counsel—Carrying Pistol.**

Upon trial of murder, the argument of counsel with reference to the local option law, and other matters outside of the record were improper, and the fact that defendant was unlawfully carrying a pistol would not render him guilty of any grade of homicide if he fired the pistol unintentionally.

Appeal from the District Court of Floyd. Tried below before the Hon. R. C. Joiner.

Appeal from a conviction of murder; penalty, six years imprisonment in the penitentiary.

The opinion states the case.

*Martin, Kinder, Russell & Zimmerman,* and *T. F. Houghton,* for appellant.—On question of admitting irrelevant testimony: Campbell v. State, 40 S. W. Rep., 282, and cases cited in opinion.

On question of charge on negligent homicide: Saye v. State, 99 S. W. Rep., 551; Talbot .v. State, 125 S. W. Rep., 906; Howard v. State, 8 S. W. Rep., 929.

On question of mistake: Maldonado v. State, 156 S. W. Rep., 647, and. cases cited in the opinion.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of admitting testimony on drunkenness: Stewart v. State, 38 Texas Crim. Rep., 627; Henderson v. State, 49 id., 269; Duke v. State, 61 id., 441.

On question of argument of counsel: 1 Branch Criminal Law, sec. 370.

DAVIDSON, JUDGE.—Appellant was convicted of murder, the jury assessing his punishment at six years confinement in the penitentiary. This is not the lowest penalty, five years being the minimum.

Appellant and deceased had been friends from early boyhood, some of the testimony showing about thirty years. This continued to the moment of the firing of the pistol which killed the deceased. The State's contention is that the killing was murder,—appellant's that it was accidental homicide. There is testimony, it is claimed, suggesting negligent homicide. The court submitted murder, negligent homicide in the second degree, and accidental shooting. Appellant contends the issue of murder is not in the case. There is considerable strength and cogency in this contention. It is also contended that if negligent homicide is in the case it is of the first degree and not of the second. It is further contended that the court erred in not submitting negligent homicide of the first degree. The further contention is made the court erred in submitting the issue of accidental homicide to such an extent that it deprived the defendant of a fair hearing before the jury on that issue.

The State's theory was that appellant was drinking, and had gone to his friend Bishop, who was in some way connected with a drug

store, and wanted Bishop, deceased, to give him a drink of whisky or alcohol, which Bishop promised as soon as he closed the store for the night. As Bishop was preparing to close his business house appellant was sitting in a chair. His pistol was discharged, striking Bishop in the leg, producing hemorrhage from which he died. Some of the witnesses thought that a firecracker had been exploded. No one saw the pistol when it was fired. No eyewitness saw appellant have the pistol, and the facts justifying the conclusion that he had the pistol and the conclusion that he fired the pistol is the fact that it was fired, Bishop was struck in the leg, and appellant's statement that he had a pistol and that it was discharged accidentally. Appellant was sitting in a chair and Bishop either standing still or walking about the room. Appellant's statement with reference to firing the pistol was that he had the pistol in his left-hand pants pocket and in his sitting position he was afraid the pistol would fall out. He reached down and got it with a view of transferring it to his inside right-hand coat pocket; that in doing so it caught on his coat or something about his person and was falling, and in catching at it it struck the chair and accidentally discharged. He stated he had no ill-will towards Bishop, who was his life-long friend and would not have hurt him. He also testified that it was an automatic pistol, and that he thought and believed that the hammer was on the safety guard and it could not be discharged. The evidence further shows that it takes but slight pressure to remove the hammer from the safety guard to place the pistol in a shooting condition; that it could not be shot while on the safety guard. He was not aware that the pistol was in such condition that it could be shot at the time he was transferring the pistol from one pocket to the other but thought it was not, and that he was so transferring it to avoid the falling on the floor and a subsequent arrest for carrying the pistol. Without going further into details this, we think, is a sufficient statement of the case to bring in review the law questions.

There is a bill of exceptions reserved to the action of the court permitting testimony to the effect that some time prior to the tragedy but the same day appellant, at the request of his friend Honea, had gotten a bottle of bitters for Honea. Various objections were urged to this. This testimony was not admissible. It is not shown to have had any connection with this transaction, was between appellant and third parties, and in no way connected with the homicide or other events which brought about the unfortunate tragedy. A number of cases are cited which sustain appellant's contention. Hodges v. State, 73 Texas Crim. Rep., 378; Roquemore v. State, 59 Texas Crim. Rep., 568; Campbell v. State, 40 S. W. Rep., 282. Other cases might be cited but we think these are sufficient.

A number of exceptions were reserved to the court's charge and special requested instructions refused which tended to present what appellant thought to be correct propositions of the law. That accidental homicide was in the case is not to be questioned, and the court

recognized this by charging the jury as follows: "I further charge you that if you believe from the evidence, or have a reasonable doubt, that defendant fired the pistol accidentally, that is, without intending to do so, and thereby killed the said S. D. Bishop, and if you believe that he did not intend to kill the said S. D. Bishop, and that defendant was not guilty of negligence and carelessness in firing said pistol, then you will find the defendant not guilty." This is the only charge the court gave with reference to this phase of the law. Without taking up either the special instructions or the reasons urged why this charge is not correct, we will say where an issue is in the case favorable to the accused he should have that issue submitted in an affirmative way untrammeled by conditions which are unfavorable to him and requiring the jury before they give him the benefit of his defense they must find other facts which, if true, would deprive him of his affirmative defensive charge. The court gave a separate charge to the jury on negligent homicide and carelessness in that connection.

If the jury should believe the testimony of appellant he should have been acquitted on the ground of accidental discharge of his pistol, and whether they should believe it or not he was entitled to have the matter fairly and squarely presented to the jury untrammeled by other conditions. The court had given the jury a charge on negligent homicide of the second degree. This question, as contended by appellant, has been decided in quite a number of cases, some of which are here cited: Hamilton v. State, 64 Texas Crim. Rep., 175; McCray v. State, 63 Texas Crim. Rep., 522; Chant v. State, 73 Texas Crim. Rep., 345; Egbert v. State, 176 S. W. Rep., 560; Windham v. State, 173 S. W. Rep., 661; Williams v. State, 75 S. W. Rep., 859; Miller v. State, 105 S. W. Rep., 502; Maldonado v. State, 156 S. W. Rep., 647. Upon another trial the law of accidental homicide will be submitted in accordance with the statute unfettered and untrammeled with conditions requiring the jury to find that negligent homicide was not in the case before they could acquit on the accidental theory. The court charged the jury if they should find there was no apparent intention on the part of the defendant to kill the deceased, and further, that at the time of the shooting the defendant was handling the pistol with which deceased was killed in such a negligent manner as that it might be discharged and thereby killed the deceased, or some other person, and if they further believe from the evidence that at the time of the killing the defendant was not exercising such care and caution under all the facts and circumstances of the case, as an ordinary prudent person would have exercised under the same or similar circumstances, then they will find the defendant guilty of negligent homicide of the second degree. Many exceptions were taken to this, among others, that it did not properly submit the law of negligent homicide of the second degree. We are of opinion that the criticisms are correct. The statute fixes the criterion by which a party may be guilty of negligent homicide, among others, there must be apparent danger of killing but no apparent

intent to kill. If negligent homicide of the second degree is in the case, it must be by reason of the facts which show that the pistol was fired intentionally in a room with apparent danger of killing, but no apparent intent to kill. As we understand this record no one saw appellant fire a pistol; it was fired from where he was sitting. No witness swears that he shot Bishop; nobody saw the pistol, and about all they testify is that the pistol was fired, the bullet taking effect in Bishop's leg, who was in the room. Appellant testified that the pistol went off accidentally, as heretofore stated. If appellant fired the pistol so that it could not be seen, in a careless way or intentionally, in the room, and the jury should find there was apparent danger of it killing somebody, it might constitute negligent homicide, and the facts, if there be any, which would justify the jury in finding there was ·apparent danger to kill, would indicate by reason of the surrounding circumstances that the bullet, there being three others besides appellant in the room at the time, might strike or could strike some of those in the room. This we understand to be the only theory upon which negligent homicide of the second degree could be predicated under the circumstances. There was no direct testimony that he fired the pistol intentionally. His evidence excludes that idea, but if he did fire it intentionally and there was apparent danger of the bullet striking some one of those in the room, negligent homicide would be an issue. It would be an unlawful act on his part if he thus fired in the room. We think the charge of the court along this line does not present that issue fairly to the jury. Upon another trial the court will properly instruct the jury.

We have said this much in a general way. so that upon another trial the court may submit the law applicable to the facts introduced on the trial. These questions are presented in quite a number of ways and in different forms, and a great number of bills of exception were reserved, but generally stated, the court submitted or undertook to do so, murder, negligent homicide in the second degree, and accidental homicide. We are of opinion the court was in error in the manner in which he submitted negligent homicide and accidental shooting. What is said has been said in a general way without taking up each bill of exceptions and the refusal to give special requested instructions, which would have eliminated or corrected the errors in the charge given. The writer does not believe that murder is in the case, and has stated enough already to justify his conclusion. There was no evidence of ill-will; there was nothing to indicate that appellant wanted to shoot his friend; no witness saw him point the pistol at or towards Bishop, and he was waiting for Bishop to close the store in order that he might give him a drink of whisky which appellant had requested of Bishop and which Bishop had agreed to give him as soon as he closed the store, and was in the act of closing at the time the pistol shot, and as the writer understands the record the firing of the pistol was not intended to kill Bishop, and the offense should not be higher than

negligent homicide if he fired the pistol at random. If the pistol went off accidentally, as he claims, the jury should have been told to acquit, and this charge should be unfettered by requiring the jury to first find that he was not negligent in discharging the pistol.

There is another question in the case which it might be well enough to notice. Appellant's contention is and the testimony shows that he believed the pistol was so arranged by being on the safety guard that it could not be fired, and that if the guard was removed in any way he was not aware of it, and that this suggested the theory of mistake. In this we think appellant is supported by the authorities and the decisions of this court. It has been held that where a party striking another over the head with a pistol, the pistol is accidentally discharged, it would not be negligent homicide. Quite a number of cases announcing this proposition might be cited, but we deem it unnecessary. If the safety guard had been so removed that the pistol could be discharged by striking the chair or some object when defendant had it in his hand or was grabbing it as it was falling, he would not be responsible for negligent homicide, but it would be an accident, and if the guard was removed in such manner as the pistol was discharged, the defendant believing it to be on the "safety," this would constitute mistake and require the court to so charge. We might suppose a case: If appellant had pointed the pistol at the deceased, believing that it was unloaded, and it proved to be otherwise, the doctrine of mistake would be in the case. If he believed the pistol was so arranged by being on the "safety" as not to be able to be fired and it did fire, there still would arise the question of mistake. This phase of the law should be given in charge to the jury upon another trial.

Some exceptions were also taken to the argument and speeches of the prosecution. Appellant sought to eliminate these features by special charges to the jury to disregard them. These the court refused. It is shown that this occurred in a county where local option is in force and the feeling of the county seems to be rather acute on that question. The State had been permitted to introduce the fact that appellant had obtained a bottle of bitters for his friend Honea, which was disconnected with this case. There is evidence that he was drinking at the time, and also that he was sitting in a chair waiting for his friend Bishop to give him another drink. These matters were used by the prosecution to show the question of malice or reckless disregard of the prevailing sentiment engendered by the operation of local option. We do not believe it is evidence that taking a drink of intoxicants in local option territory is usually malice in a homicide case, unless there is connection shown in the testimony between the drinking of the whisky and the shooting as a reason for the shooting.

Another bill of exceptions recites that the district attorney said: "If you turn this man loose, you had as well burn up your law books and tear down your courthouse," and further stated, "You gentlemen of the jury are not going to let men come to town loaded down with

whisky and armed with a gun and shoot down your business men." Special requested instructions were asked that these statements be withdrawn from the jury. This was refused. Upon another trial such argument should be avoided.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

HARPER, JUDGE.—I think the physical facts and circumstances adduced would authorize a finding by the jury that appellant intentionally shot the deceased, and if so he would be guilty of murder. If under the circumstances the jury should find that he intentionally fired the pistol, yet if he had no intention to shoot deceased or any other person present, then appellant would be guilty of negligent homicide. If appellant did not intentionally fire the pistol, and it was accidentally done, accidental homicide would be presented, and appellant would be guilty of no offense. The fact that he was unlawfully carrying a pistol would not render him guilty of any grade of homicide, if it was not intentionally fired, under the facts in this case.

PRENDERGAST, PRESIDING JUDGE.—It is so late in the term I will not have opportunity to fully study the record. However, I think the testimony as to the Honea matter was admissible. I think murder was in the case strong, and I am inclined to believe no reversible error is in the case.