CLAUD HUBER, alias JACK BENSON, alias C. J. COOK v. THE STATE.

No. 8017.   Delivered February 24, 1925.

**Seduction—Charge of Court—Reasonable Doubt—As to Chastity.**

> The issue of reasonable doubt as to the chastity of prosecutrix, in a seduction case, if raised by the evidence should be affirmatively submitted to the jury in the charge of the court, notwithstanding the fact that in his general charge the court gave the doctrine of reasonable doubt, as applicable to the whole case.  Following Reeves v. State, 10 S. W. 845 and cases cited.

Appeal from the District Court of Caldwell County.   Tried below before the Hon. M. C. Jeffrey, Judge.

Appeal from a conviction for seduction, penalty two years in the penitentiary.

The opinion states the case.

*Zeb V. Nixon,* of Luling, *C. F. Richards,* of Lockhart, and *Leon Green,* of Austin, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Caldwell county of seduction, and his punishment fixed at two years in the penitentiary.

This is rather a remarkable case.   Prosecutrix, a young woman twenty years of age, was at work at Luling.   She met appellant in January, 1923, she being out with a young man named Ussery, and he with a young woman named Kurtz.   She admits that on this occasion young Ussery hugged and kissed her and "loved her up."   She says she had been going with young Ussery alone a good many times and that he had indulged in such conduct with her.   A short time after meeting appellant she went out with him alone at night.   We quote from her testimony as follows:

"The first night he took me out by himself, why he told me he loved me and he would marry me if I would give it to him, and I didn't; the second night I went with him, and the second night he told me again, and I didn't, and the third time he took me out alone he told me again he loved me and he would marry me in a week or so, and he told me I would not dare give to any other boy or he would kill me if he found it out and kept after me to give to him, and finally, I did.

That occurred down by the river when there was no one present but just the defendant and I.   On the occasion I have related he

told me he was going to marry me if I would give it to him, and kept on saying it.''

A short time after the occurrence prosecutrix says she went to San Antonio with appellant for the purpose of getting married, but they concluded not to marry and came back to the home of her parents. She had told appellant that her father gave to each one of his children two hundred dollars as a wedding present. When they reached her mother's home, they were asked whether they were married and she says that appellant replied, ''It is all over.'' They remained at their home that night and she was given two hundred dollars by her father. She gave this money to appellant and they took the train and went to Houston where they stayed a week at the Majestic hotel, registering under the name of Cook. They were not married in Houston. At the end of the week they got on the train and came back; he went to Luling and she to the home of her parents. Appellant had a wife and children at Luling.

We have scanned the facts closely with two points in view, viz.: first, to ascertain the motive which induced prosecutrix to yield to appellant's solicitations, and with the further purpose of finding out what light is shed upon the question of her chastity. She admitted that just before going with appellant she had been going with the Ussery boy, and detailed their conduct together but denied any carnal knowledge of him. She admitted going with a boy named Murphy, who hugged her and ''loved her up.'' As part of the case for the defense a boy named Mayton took the stand and testified that about the third week in January, 1923, he, in company with a group of others, went down on the river fishing; that they made down pallets on the river bank, and that the others went to look at the fishing lines leaving him and the prosecutrix alone, and that they rolled around and he had his arms around her and was playing with her legs, and that during the time he got on her and talked about having intercourse. He said that during the night they all ''wallowed around each other on the pallets.'' The brother of appellant testified that on one occasion he and Leona Kurtz went to a dance and prosecutrix and Otis Ussery were on the front seat of the car and that Ussery ''loved her up and kissed her in his presence.'' This was not denied. On the way home that night Ussery, who was driving, stopped the car and he and prosecutrix got out and said they wanted to get some water. They went up the road and stayed awhile and came back laughing and said they did not need any water in the car. Appellant introduced Leona Kurtz, who testified that she saw prosecutrix engaging in an act of intercourse with Otis Ussery. This was not thereafter denied. Bill Huber, a cousin of appellant, testified that he went out on the river near Luling with prosecutrix and that he loved her up a little,

put his arms around her, played with her legs and asked her to have intercourse with him, and she at first said she did not do that but he kept on playing around and she finally said she could not because her monthly sickness was on; that she did not get insulted at his proposition.

The defensive theory was that prosecutrix was unchaste, and an exception was taken to the charge of the court because it did not directly and pertinently apply the issue of reasonable doubt to the question of her chastity. A special charge was asked to the effect that unless the jury believed beyond a reasonable doubt that she was chaste at the time appellant first had intercourse with her, that he should be acquitted. This was refused. In Simmons v. State, 54 Texas Crim. Rep. 619, a case in which reliance was had upon the unchaste character of prosecutrix, the following special charge was requested:

"You are charged that before you can convict the defendant, you must believe beyond a reasonable doubt, that defendant seduced the prosecuting witness in Haskell county, and that at that time she, the said Bessie James, was a chaste woman, who had never had sexual intercourse with any one, and unless you believe beyond reasonable doubt, that said Bessie James had never had such sexual intercourse with any one, prior to the time she had such intercourse, if any, with defandant in Haskell county, you must find the defendant not guilty."

This court held that the charge should have been given, notwithstanding the fact that in his general charge the court gave the doctrine of reasonable doubt as applicable to the whole case. It is in line with our frequent holding that the defendant is entitled to an affirmative presentation of the law applicable to his defensive theory if hͻ has one. In the case on trial there is no affirmative presentation of the defensive theory, and on the point under discussion the charge contained only the following:

"You are instructed that at the time the defendant had illicit intercourse with the witness Alvina Seiler, that if she had prior thereto had illicit intercourse with any other man, then you will acquit the defendant and say by your verdict not guilty."

We are specially impressed with the fact that an affirmative charge presenting the doctrine of reasonable doubt in connection with the question of the chastity of prosecutrix should have been given, under the facts in this case. We have examined the statement of facts and find nowhere in the testimony of this young woman the slightest indication of having yielded to appellant upon the ground of affection or love. There is no suggestion that she entertained any such feeling or emotion for him. There is not a word in her testimony to indicate that she cared anything for him. She said that on the first night he took her out he told her he loved

her and would marry her *if she would give it to him,* and she did not; that two nights later he took her out and told her again that he loved her and would marry her *if she would give it to him,* and she did not; that two nights later he took her out and told her the same thing and she yielded to him. The evidence raises a very serious question in our minds. In Reeves v. State, 10 S. W. Rep., 845; Spenrath v. State, 48 S. W. Rep., 193; Murphy v. State, 143 S. W. Rep. 619, and Gleason v. State, 178 S. W. Rep., 506, appear statements to the effect that one who claims to have been seduced by simply a blunt offer of wedlock in the future in exchange for immediate sexual favors is stating that which smacks too much of bargain and barter and not enough of betrayal. In one of the opinions appears the statement: "This is hire, or salary, not seduction."

Believing the court should have given the special charge requested, and being in such serious doubt as to the sufficiency of the facts, the judgment will be reversed and the cause remanded.