### GENE BUCHANAN V. THE STATE.

No. 16855. Delivered June 27, 1934.
State's Rehearing Denied October 17, 1934.
Reported in 74 S. W. (2d) 1022.

The opinion states the case.

*Thomas B. Ridgell,* of Dallas, for appellant.

*H. F. Grindstaff,* District Attorney, of Aspermont, *B. C. Chapman,* County Attorney, of Haskell, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of an assault with intent to murder, and his punishment assessed at confinement in the State penitentiary for a term of one year and one day.

The testimony adduced upon the trial, briefly stated, is as follows: On the afternoon of the 30th day of April, 1933, the appellant was in the town of Throckmorton. The sheriff saw him and concluded that he, the appellant, was drunk and told him he had to go home. While the sheriff was instructing the appellant to go home the appellant's nephew appeared upon the scene and agreed to take the appellant home. They got in the car together and started out of town, but in a very short time the appellant returned and drove his car up to the sidewalk near where the sheriff was standing. The sheriff again told him to go home or he would lock him up, at which time the appellant's sister came upon the scene and asked the sheriff to let her have him, that she would take him home. The appellant and his sister then got in the appellant's car and started home, the sister doing the driving. A short time thereafter the appellant again appeared on the streets of said town and the sheriff then undertook to arrest him and confine him in jail. An argument ensued, the appellant contending that he was not drunk while the sheriff contended that he was. The appellant declined to go to the jail with the sheriff but agreed to go with some boys who were present, whereupon the sheriff told him to go on with the boys, which he did, with the sheriff following. When near the jail the sheriff remembered that he had left the jail keys in his office at the courthouse and

started back to his office for the keys. During his absence the appellant left the boys at the jail and went home. Soon after the appellant had reached home, the sheriff and some of his deputies appeared at the appellant's home with the intention of arresting him. When the sheriff entered the yard and started toward the house, the appellant appeared on the gallery of his home with a 22 rifle and told the sheriff not to come any nearer or he would shoot him. After some argument, the appellant walked into the yard near a tree and while there the appellant's father came out to where he was and tried to persuade the appellant to give him the gun. The father took hold of the gun and tried to take it away from the appellant. The sheriff, who at that time had gotten within a few feet of the appellant, grabbed the rifle and jerked it out of the appellant's hands, at which time the rifle was discharged, and the appellant ran away and while he was running the sheriff and his deputies shot in the direction of the appellant. The appellant went to the home of Mr. Davis, secured a shotgun, and returned, but did not shoot or attempt to shoot the sheriff. The sheriff and his deputies then left and the appellant retired, but early in the morning he left for California and on his return was arrested and charged with the offense upon which he was tried.

The court in his charge instructed the jury on an assault to murder with malice, on an assault to murder without malice, on aggravated and simple assault, but the only instruction relating to the appellant's defensive theory is the following:

"You are instructed if you believe the defendant's gun was accidentally discharged, you cannot convict the defendant of an assault with intent to murder unless you further believe beyond a reasonable doubt that at said time said defendant made an assault upon Zack McWhorter with the intent to kill him, and if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of an assault with intent to murder."

The appellant objected to said charge in that it did not submit the issue in an affirmative way untrammeled and unmingled with any improper conditions, and he also submitted some special charges covering that phase of the issue of accidental discharge of the gun. The trial court declined to amend his charge and declined to submit the appellant's requested special charge. Without taking up either the special instructions or the reasons urged why this charge is not correct, we will say that the issue in the case was favorable to accused and he should have that issue submitted in an affirmative way, un-

trammeled and unmingled by improper conditions which would deprive him of an affirmative defensive charge. We believe that the learned trial court fell into error in submitting the charge in the language that it was submitted, and in support of the views herein expressed we refer to the following authorities: McPeak v. State, 187 S. W., 754; Harris v. State, 274 S. W., 568; Huber v. State, 268 S. W., 733. Upon another trial the court should submit to the jury a charge on accidental discharge of the rifle without any conditions, or limitations. This charge was virtually an instruction to the jury that although the rifle was accidentally discharged, yet if they believed beyond a reasonable doubt that at said time defendant made an assault upon McWhorter with intent to kill him, he would nevertheless be guilty of an assault with intent to murder. When there is no evidence that any other kind of an assault was made or relied upon by the State than the firing of the rifle, if this was accidental, then it did not constitute an assault with intent to murder.

The appellant also objected to the court's charge in which he instructed the jury under article 212, C. C. P., that an officer may without warrant arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony. The court also instructed the jury that the driving of an automobile upon a public highway while intoxicated is a felony, and further instructed them that "if they should find and believe from the evidence beyond a reasonable doubt that the defendant, Gene Buchanan, on or about the 30th day of April, 1933, did in Throckmorton County, Texas, drive an automobile upon a public highway while under the influence of intoxicating liquor, and that Zack McWhorter, the sheriff of Throckmorton County, Texas, saw the defendant so driving an automobile upon the public highway, then the said McWhorter had a right to arrest the defendant without a warrant." To this charge the appellant in due time made written objections and submitted to the court a special charge, but the court declined to amend his charge or to give the appellant's special requested instruction. There is no doubt in our minds that as an abstract legal proposition the court's charge was correct, but in all cases the court should apply the law applicable to the facts introduced upon the trial. The facts in this case show that if the appellant did commit a felony by driving an automobile upon the public highway in the town of Throckmorton while intoxicated, and in the presence of the sheriff, it happened some time before the sheriff went out to

appellant's home to arrest him and after the sheriff had permitted appellant's sister to take him home, and after the appellant had walked back to town and then walked back home. The article above referred to and article 215, C. C. P., authorize the then arrest of an offender without a warrant when the offense is committed within the presence or within the view of a peace officer, *or where it is shown by satisfactory proof to a peace officer, upon the representations of a credible person,* that a felony has been committed, and that the offender is about to escape so that there is no time to procure a warrant. (Italics ours). But, if the facts do not exist which would under the articles above referred to authorize the arrest without a warrant of a person who has committed a felony, then it follows that the legal authority to do so does not exist, and the arrest or attempted arrest would be illegal.

The testimony given by the witness Bill Tharp and the admission of which is complained of in appellant's bill of exception No. 3 appears to us to be irrelevant.

There are a number of other bills of exception in the record, but we do not deem it necessary to discuss them as the matters therein complained of may not arise again upon another trial. We do not believe that the evidence adduced upon this trial was sufficient to warrant a conviction for assault with intent to murder.

For the error hereinabove pointed out, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Motion for rehearing has been filed by the District Attorney and the County Attorney in which, among other things, it is stated that the charge of the court in regard to the accidental discharge of the gun, which instruction appears as paragraph 15-A of the charge, was inserted by the court in response to an exception to the charge as originally prepared. An examination of the purported exceptions for the purpose of ascertaining whether there was any certificate of the presiding judge supporting the averments in the State's motion for rehearing leads to the discovery that the purported exceptions are in no way authenticated by the trial judge. This was overlooked at the time our original opinion was prepared

and perhaps for that reason what we said in regard to the exceptions to the court's instructions ought to have been omitted, and for that reason we do not discuss those matters further.

As requested by the representatives of the State, we have again given careful attention to the facts before us to determine whether we were in error in our original opinion indicating that we did not believe the evidence supported a conviction for the offense of assault with intent to murder. We find that the sheriff himself testified that there was nothing to have prevented appellant from shooting as he (the sheriff) was walking up toward appellant; that he did not shoot, but had the chance to, and that he did not shoot until after the sheriff had grabbed the gun. The sheriff said, "He told me to stop, and if I didn't he would shoot and I kept easing up on him until I finally lunged at him and the gun went off." A controversy or issue was raised as to whether the father of appellant had hold of the gun at the time it was discharged. The sheriff says he did not, but the father testified that he did have hold of the gun and was taking it away from appellant, at which time the sheriff reached over his shoulder and jerked the gun, and that in jerking it the sight on the gun cut the father's hand, and that the gun was discharged as the sheriff jerked it away. Appellant himself testified that he did not fire the rifle at the sheriff and that he did not know how it went off any more than anybody else did. He said there was nothing to keep him from shooting the sheriff from the time he came on the porch until after the rifle was jerked out of his hands. The record before us further shows that after the rifle was taken from appellant he ran away and that some shots were fired by the sheriff and his deputy in the direction in which appellant had gone. Appellant secured a shot gun and came back and had another opportunity to shoot the sheriff with this gun, but made no attempt to do so. The sheriff again fired in the direction of appellant, who again ran away.

We feel impelled to say that under the entire record, viewing it in the strongest light for the State, we have been unable to get our consent to hold the evidence sufficient to sustain a conviction for assault with intent to murder.

The State's motion for rehearing is overruled.

*Overruled.*