JOHN RUSSELL v. THE STATE.

No. 1388. Decided February 2, 1898.

### 1. Murder—Irrelevant and Immaterial Evidence.

On a trial for murder, where it appeared that the city marshal had sent defendant and two other parties, without a warrant of arrest, to the house of a white woman in order to find out if a certain negro man was in the house, and if so, to arrest or detain him; and defendant broke open the door and fired his pistol into the house, and the woman was killed; Held, the court properly excluded evidence offered by defendant to prove that the negro man was keeping or having illicit intercourse with the woman who was killed. Such testimony could serve no legitimate purpose.

### 2. Same— Evidence of Statements by Defendant when Under Arrest—Privileged Communications.

Where it was shown that defendant had been duly warned by the sheriff, Held, a proper predicate was laid for the introduction of the statements made by the defendant to his attorney in the presence and hearing of the sheriff, and such communications to his attorney were not privileged.

### 3. Same—Evidence—Attack by Defendant Upon Sheriff.

On a trial for murder, it is admissible and competent to show that defendant made an attack on the sheriff in an endeavor to escape.

### 4. Same—Negligent Homicide—Charge.

On a trial for murder, where the evidence tended to show that the defendant intentionally and recklessly fired into the private residence of deceased and her two children, the killing of the mother would be murder in the first or second degree, and the court correctly so charged the jury, and further, that such killing could not be negligent homicide.

### 5. Intent in Crime—Circumstantial Evidence as to—Charge.

When an act is proved by direct or positive testimony, and all that remains to be found is the intent which accompanied the act, and which may be inferred from the circumstances accompanying the act, the rule requiring a charge upon circumstantial evidence does not apply.

### 6. Disturbance of the Peace—Rudely Displaying a Pistol—Peace Officer.

While a peace officer is authorized to carry a pistol, it is nevertheless an offense for such officer to rudely display and fire off a pistol at or near a private residence in a manner calculated to disturb the inhabitants thereof.

APPEAL from the District Court of Fannin. Tried below before Hon. E. D. McLELLAN.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The indictment charged appellant with the murder of one Ella Vandergriff, on the 18th day of February, 1897, by shooting her with a pistol.

The following statement of the case is taken from appellant's brief:

The only evidence of appellant's shooting was the testimony of Meyers and appellant himself. They and Earp were sent to the house of deceased by Leeman, the city marshal, to apprehend and detain a negro man named Thuston, who was believed to be living in adultery with deceased, who was a married white woman. They were told by the marshal to not allow the negro to escape; that he was dangerous and might hurt them; that he had bought a pistol, and said at the time that "no son of a bitch of a white man" could arrest him. Meyers, appellant, and Earp (who did not testify) started to the house for said purpose. After starting, they consulted together about the danger of the expedition, and not believing that anyone but appellant could get a pistol from the marshal, he was sent back for it. The marshal gave appellant the pistol, and he returned and gave it to Earp. When they got near the house, it being about midnight, they stopped to listen. No light in the house; could not see or hear anyone. They then went up to the house. Appellant had a pistol in his hand, and Earp had the marshal's pistol in his hand; Meyers was leaning against the house, Earp near him, and appellant in front of door. They listened again, and not seeing or hearing anyone, concluded no one was at home. Appellant knocked on the door; no one answered. He said he would take an ax and make them open. No response. He then gave the door a kick. The door unexpectedly flew open, and as it flew open he staggered forward; as he staggered, his pistol fired immediately. Meyers and appellant both agree and testify to this in substance up to this point, and that no other shot was fired. Meyers further states that he saw no one; did not know whether defendant shot deceased; did not know that she was shot till next day; can't say whether pistol was fired accidentally or not; didn't see deceased or hear her or anyone in the house; don't know whether appellant knew her or had any malice against her; he heard appellant say that his pistol was elevated too high to hurt anyone when he fired. Appellant testified in substance as above, and that he had a stiff leg, which had been broken; that he did not know deceased or the negro; had no malice against either; went there at the marshal's request. When he kicked the door it flew open, and he staggered forward; as he staggered his pistol was accidentally discharged from the jar; that he had no intention of shooting in the house, unless he was attacked by the negro; that he had his pistol cocked when he kicked the door; that it was pointed up, as he thought at the time, too high to hit anyone; that he never knew till next day that deceased was shot; don't now believe that he shot her, and did not believe it when arrested; that if he shot her, it was an accident; that he had just come to Honey Grove on a visit to his sister; that he had intended to go back to his work the day

before, but stayed over to let his brother-in-law ride his horse on a rabbit chase; that he is a cowboy, and lived on the plains about 300 miles away; that persons where he lives are accustomed to carrying pistols. Meyers also testified, that when appellant went up to the door he told him not to do that, it was contrary to Leeman's instructions; and that after the pistol fired he told him he ought not to have done that, as there were children in the house, to which appellant replied that he saw that the pistol was elevated too high to hurt anyone. This is substantially all the evidence as to the shooting.

The witnesses testified, that after they had gotten some distance towards the depot, after the shooting, they heard the screams of a woman back in the direction of the house, but did not go back there, because they thought that the woman was simply screaming from fright, and did not know that she was hurt. Defendant objected to the following portion of the charge of the court to the jury as is set out in his seventh bill of exceptions, viz: "If the defendant intentionally discharged his pistol into a house where Ella Vandergriff was, without intending to injure any particular person, but knowing that the shot might and probably would strike and kill or seriously injure some one or more of the occupants of said house, and not caring whom he might kill or injure, and such shot caused the death of Ella Vandergriff, then such killing would not come within the definition of negligent homicide, but would be murder in the first or second degree," etc., to which charge of the court defendant excepted and asked the court to modify or strike it out, for the following reasons: There was no evidence, either positive or circumstantial, on which to base said charge; that is, that defendant fired into the house not caring whom he might kill or injure, because the court had already charged fully what constituted murder in the first and second degree, and because said charge was more an argument on assumed facts, and would more properly come from the district attorney in his closing argument, than an explanation of the law applicable to the case, to which objections of and request by the defendant's counsel the court paid no attention, but gave the same in charge to the jury as a part of the law of the case.

*James H. Lyday*, for appellant.—Where the only evidence in the case shows that the shooting was accidental or that it was unintentional, or where it fails to show that it was intentional, and where there is a complete failure to prove malice or a motive to commit the crime charged, a verdict of guilty of an intentional killing with malice aforethought is not only a finding contrary to the weight of the evidence, but is a verdict against the evidence, and neither trial nor appellate court should hesitate to nullify and set it aside.

The court erred in refusing to grant a new trial, because the verdict is contrary to the law and the instructions of the court; because the undisputed evidence in this cause shows that if defendant is guilty of any offense it is the offense of negligent homicide and not murder.

If appellant was engaged in the performance of a lawful act when he responded to the marshal's request to go to the house of deceased, and he negligently discharged his pistol and caused the death of the deceased, he is guilty of no higher offense than negligent homicide of the first degree. If by negligence, as above stated, he was engaged in an unlawful act, such as unlawfully displaying a pistol near a private residence, or injuring private property in such manner as an action for damages would lie, by kicking open the door, and while thus engaged he negligently discharged his pistol and killed deceased, he would be guilty of no higher offense than negligent homicide of the second degree, and the court so charged. Wills. Crim. Stats., arts. 578-592; Howard v. State, 25 Texas Crim. App., 687; Curtis v. State, 22 Texas Crim. App., 227; Clark v. State, 19 Texas Crim. App., 495; McConnell v. State, 13 Texas Crim. App., 390; Robins v. State, 9 Texas Crim. App., 667.

The court erred in excluding the evidence of witnesses Parker, Campbell, Leeman, and Doty, said evidence being offered as tending to prove that deceased and negro Thuston were living together in adultery, and tending to establish the good faith and legality of the expedition to the house of deceased to arrest said Thuston.

The intent with which an act is committed is the pivotal point. Where the good faith of an expedition is challenged, any evidence showing the lawful purpose, the innocent intent, and the good faith of the enterprise, is legal, and it is error to exclude it. McNair v. State, 14 Texas Crim. App., 82; Hart v. State, 15 Texas Crim. App., 202. As to proof of collateral facts, see Russell v. State, 11 Texas Crim. App., 288; Bowers v. State, 24 Texas Crim. App., 543; Green v. State, 12 Texas Crim. App., 51.

The court erred in refusing to exclude the evidence of Sheriff Webb Riddling, as shown by bill of exceptions number 5, because defendant was in jail at the time said statement was made, as follows, to wit: "There are others implicated." And because the proper predicate was not laid by proving that the statement was voluntary; because it was made to his attorney, and was privileged; because it was uncertain and indefinite as to what he meant by it, the witness himself not knowing whether he referred to the attempted arrest of the negro or the killing of the woman, and because the whole statement tended to prejudice the jury and threw no light on the charge against him, and was in no sense a confession, and was offered as a basis to prove that defendant assaulted the sheriff, and that assault used as evidence of flight and thus prove his guilt, all of which was illegal and calculated to and did prejudice his case before the jury.

Before a statement made under duress can be used against the accused, the State must show affirmatively that it was voluntary, and a statement made to the attorney of the accused is privileged and can not be used against him. An assault on the sheriff by the accused and an attempt to take his pistol is no legal evidence to establish a murder of another person long prior thereto; nor is an attempted escape from jail, and any evidence

illegally admitted ·that is calculated to prejudice the jury is just cause
for a new trial or reversal of the case.    Riddling, the sheriff, stated that
he went to the jail with Huse Lee, who was defendant's attorney and
brother-in-law.    "When we went in the jail where defendant was he in
my presence started to make a statement, as I thought about the killing
with which he was charged, and I warned him that any statement he
might make in my presence could be used in evidence against him and
not for him.    Defendant then said, 'there are others implicated,' but I
don't know whether this was said with reference to the killing of the
woman or the attempt to arrest the negro.    Just at this time the defend-
ant seized me and struggled to get my pistol.    I called my brother and
Mr. Lee to come to my assistance.    I shall always feel grateful to Mr. Lee
for saving his life."    Code Crim. Proc., art. 750; Womack v. State, 16
Texas Crim. App., 178; Nolen v. State, 14 Texas Crim. App., 474; Collins
v. State, 20 Texas Crim. App., 399; Allen v. State, 12 Texas Crim. App.,
190.

The court erred in that portion of the charge in not limiting said
charge to a person who had no right to carry a pistol and to the accidental
discharge of same, and in its definition of a misdemeanor said charge
reads as follows: "Rudely displaying and firing off a pistol at or near a
private house, in a manner calculated to disturb the inhabitants thereof,.
is a misdemeanor."    Because rudely displaying a pistol which one has the
right to carry, or the accidental discharge of such weapon, is no offense,
and because the statute does not mention firing a pistol, but rudely dis-
playing it, etc., is a misdemeanor.

*Mann Trice,* Assistant Attorney-General, for the State.

[No briefs found in the record.]

HENDERSON, JUDGE.—Appellant was convicted of murder in the
second degree, and his punishment assessed at five years confinement in
the penitentiary; hence this appeal.

The testimony, briefly stated, shows that deceased was a woman who·
lived in the town of Honey Grove, Fannin County; that it was rumored,.
as claimed by defendant, that deceased was having illicit intercourse
with a certain negro.    The defendant, with one Frank Meyers and Will
Earp, was sent down to the house occupied by the deceased about 12·
o'clock on the night of the homicide, by the marshal, to ascertain
whether or not said negro was there, and if he was, to arrest, or at
least detain, him until he (the marshal) could be sent for.    It is shown
that the parties went there.    Two of them stopped at or near the north-
east corner of the house.    The defendant in the meantime went to the·
door, and demanded that it be opened, threatening to break it with an
ax.    He then kicked it open, and immediately the pistol fired.    They im-
mediately left the place, and in a few moments a woman's scream was.
heard at the house.    Some of the neighbors gathered in, and ·found that

she had been shot. She died on the next day. Appellant's theory was that he did not intend to fire the pistol. In kicking the door open, it came open easier than he thought for, and the pistol was accidentally discharged. He thought at the time that he fired too high to hit anybody in the building. This theory was supported by his evidence. Other testimony for the State tended to show that he entertained malice against the deceased, because she had his friend Stegall arrested a few days before for an assault with intent to rape her; that he went voluntarily on that particular night; and that he broke open the door and fired the shot in the house intentionally. The witnesses for the State show that he made no claim that night of an accident. A witness also testified that the next day he denied being at the house or shooting into it. The court submitted murder in the first and second degrees, negligent homicide in the first and second degrees, and acidental killing.

Appellant's first, second, third, and fourth bills of exception relate to the exclusion of testimony offered by him, tending to show that the deceased was guilty of illicit intercourse with the negro Charley Thuston; in fact, that said negro was keeping her. The court excluded all of said testimony. Appellant claims that it was admissible for the purpose of showing the good faith of the defendant in going to apprehend the negro at the house of the deceased. If the facts stated are true, it might have authorized the making of an affidavit against deceased and against the negro Charley Thuston by the marshal or any one else, and so authorized the issuance of a warrant under which the parties might have entered the premises of the deceased with some color of right. No warrant was issued, and the parties had no right to go on the premises of the deceased to make this arrest. The testimony in question would have served no legitimate purpose. Notwithstanding the parties had no right to commit a trespass as they did upon the premises of the deceased, yet the court did admit testimony showing the purpose for which they went there; that it was at the instance of the marshal. This was as much as defendant could claim. Nor did the court, in its charge, lay any stress on the illegality of the action of the defendant in going upon the premises of the deceased to make the unlawful arrest; but the case appears to be treated from the standpoint of the charge, as if the parties were lawfully upon the premises where the homicide took place. This was certainly most liberal towards appellant; and, in our view, he can not complain of the action of the court in excluding the testimony set out in his above bills of exception.

Nor was there any error in the action of the court in admitting the testimony of the sheriff of Fannin County as to the statement made by the defendant while in jail and in his custody. The proper predicate was laid, as the sheriff had, just before said statements were made, duly warned him. It was not a privileged communication made to the attorney, but it was made to the sheriff, or at least in his presence, and after he had been warned. Had the attorney desired a private interview with his client, he should have asked it. The statement made, "that

there are others implicated," evidently had reference to the homicide; and the fact that he immediately made an attack on the sheriff in an endeavor to escape was legitimate testimony, just as much as evidence of his flight would have been had he fled immediately after the homicide.

The rule of law announced by the court in that portion of the charge presented in bill of exceptions number 7 is a correct rule of law, and was applicable to a phase of the evidence in this case. There was evidence tending to show that the shot was intentionally and recklessly fired into the private residence where the deceased and her two children were, and the court merely instructed the jury that a homicide committed under such circumstances would not be negligent homicide, but would be murder in the first or second degree, as the jury might find from the evidence under the charges defining said offenses.

Appellant complains that the court did not charge on circumstantial evidence. This was not a case depending on circumstantial evidence. Appellant's presence at the place of the homicide, and that he fired the fatal shot, were established by the positive testimony of eyewitnesses. His intent, it is true, was a matter of circumstantial evidence. The State introduced testimony tending to show an intentional shooting, and the defendant's testimony suggested an accidental killing. This would not require of the court a charge on circumstantial evidence. Mr. Thompson extracts the rule from the authorities as follows: "The rule requiring the giving of a charge on circumstantial evidence is proper when the act which is claimed to be criminal is sought to be established by circumstantial testimony; but when the act is proved by direct testimony, and all that remains to be found is the intent which accompanied the act, and which may be inferred from the circumstances accompanying the act, then this principle does not apply." See 2 Thomp. Trials, sec. 2505.

Appellant complains that the court erred in that portion of his charge which instructed the jury that "the rudely displaying and firing of a pistol at or near a private house, in a manner calculated to disturb the inhabitants thereof, is a misdemeanor, under the law," because he says this charge ought to have been limited as to those who were not peace officers. We know of no rule of law authorizing a peace officer to rudely display and fire off a pistol at or near a private residence, in a manner calculated to disturb the inhabitants thereof. The court, however, gave a charge with reference to the right of a peace officer to carry a pistol; that is, after instructing the jury that no person was authorized to carry a pistol on and about his person on premises not his own, he told them that this did not apply to a peace officer or policeman, or a person summoned to aid such officer or policeman, as such officers have the right to carry a pistol. We have examined the charge of the court carefully, and, in our opinion, it covered every phase of the case; and its provisions were liberal so far as the rights of the appellant were concerned. A full charge on accidental shooting was given, which is all defendant could claim under the facts of this case.

Appellant was convicted of murder in the second degree, and in our opinion the evidence fully sustains the finding of the jury, and the judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]