# Charles D. Clark v. State.

No. 26,141. January 14, 1953.
Appellant's Motion for Rehearing Denied April 8, 1953.
Appellant's Second Motion for Rehearing Denied (Without
Written Opinion) May 6, 1953.
Writ of Certiorari Denied by Supreme Court of the
United States October 19, 1953.
**Petition for Rehearing Denied by Supreme Court of the**
United States November 30, 1953.

*John H. Martin, Robert C. Benavides, Newton Kennedy,* Dallas, *William E. Davenport* and *William C. McDonald, San Angelo,* and *Cofer & Cofer,* Austin, for appellant.

*Earl W. Smith,* District Attorney, *H. C. Upton* and *B. W. Smith,* all of San Angelo, and *George P. Blackburn,* State's Attorney, Austin, for the state.

*Robert T. Neill,* San Angelo, Amicus Curiae.

MORRISON, Judge.

The offense is murder; the punishment, death.

The deceased secured a divorce from appellant on March 25, 1952. That night she was killed, as she lay at home in her bed, as the result of a gunshot wound. From the mattress on her bed, as well as from the bed of her daughter, were recovered bullets which were shown by a firearms expert to have been fired by a .38 special revolver having Colt characteristics. Appellant was shown to have purchased a Colt. 38 Detective Special some ten months prior to the homicide.

The state relied in main upon three witnesses to establish its case.

Appellant's former step-daughter, the daughter of deceased, testified that she awoke on the night in question and saw appellant standing by her bed; that she asked him what he was doing there; and he said that he had come to ask her help in persuading her mother to come back to him. The witness declined to be of such aid, and the appellant said, "That is all I wanted to know." She then saw a pistol in his hand.

Tomas Menchaca testified that he had been in appellant's employ for fourteen years and that he was with the appellant throughout the night of the homicide. He stated that, as they drove about the city throughout the early part of the night, they discussed the fact that appellant's wife had divorced him that day. Menchaca related that during the course of the night the appellant announced that he wanted to talk to his wife; that at the time appellant was armed with one large and one small pistol; that they parked near deceased's home, and the appellant left him in the automobile for approximately thirty minutes. The witness stated that while he was waiting for appellant he heard a noise that sounded like a shot, but that when appellant returned he reported that he had had a long talk with his wife. Menchaca related that upon their return to the hotel appellant wrote a letter, stated that he was going to place a long distance call to a friend in Dallas, sent the witness out to mail a letter; and when the witness returned he overheard appellant's last statement over the telephone as follows, "All right, I will do it." The witness related that following the telephone conversation he and the appellant left the hotel again; that appellant was still wearing the two pistols; that after driving a distance appellant let him out of the automobile and told him to wait; that he did so; that appellant returned in some twenty minutes; and when they got back to the hotel he noticed that the smaller of the two pistols was missing from appellant's person; that appellant warned him not to disclose what they had done that night; but that at no time had appellant confided in him concerning his activities further than as set forth above. Menchaca identified the knife found in deceased's bed as belonging to appellant. The witness admitted that he had been charged as an accessory, had been placed in jail for a while, and had failed to disclose what he knew to the prosecuting officials when first questioned by them.

Marjorie Bartz, a telephone operator in the city of San Angelo, testified that at 2:49 in the morning of March 26, 1952, while on duty, she received a call from the Golden Spur Hotel;

that at first she thought the person placing the call was a Mr. Cox and so made out the slip; but that she then recognized appellant's voice, scratched out the word "Cox" and wrote "Clark." She stated that appellant told her he wanted to speak to his lawyer, Jimmy Martin in Dallas, and that she placed the call to him at telephone number Victor 1942 in that city and made a record thereof, which record was admitted in evidence. Miss Bartz testified that, contrary to company rules, she listened to the entire conversation that ensued, and that it went as follows:

The appellant: "Hello, Jimmy, I went to the extremes."
The voice in Dallas: "What did you do?"
The appellant: "I just went to the extremes."
The voice in Dallas: "You got to tell me what you did before I can help."
The appellant: "Well, I killed her."
The voice in Dallas:: "Who did you kill; the driver?"
The appellant: "No, I killed her."
The voice in Dallas: "Did you get rid of the weapon?"
The appellant: "No, I still got the weapon."
The voice in Dallas: "Get rid of the weapon and sit tight and don't talk to anyone, and I will fly down in the morning."

It was stipulated that the Dallas telephone number of appellant's attorney was Victor 1942.

Appellant testified in his own behalf and claimed that he was emotionally upset and did not remember the events of the evening.

The issue of insanity was raised by the testimony of other witnesses and resolved against the appellant by the jury. We find the evidence sufficient to support the verdict.

We now discuss the contentions raised by appellant's able counsel in their carefully prepared brief.

Proposition (1) is predicated upon the contention that Miss Bartz did not know the identity of the parties whose conversation she overheard. Miss Bartz testified that she had placed long distance calls for appellant before the night in question and that she recognized his voice when he placed the call to his lawyer Jimmy Martin in Dallas. It was stipulated that the telephone number on the company record of the call introduced in evidence was that of appellant's attorney in Dallas. Recently,

in Schwartz v. State, 158 Tex. Cr. Rep. 171, 246 S. W. 2d 174, we had occasion to quote with approval from 22 C.J.S., Crim. Law, Sec. 644, relating to the same contention, as follows:

"The completeness of the identification goes to the weight of the evidence, and not to its admissibility. Whether evidence of a telephone conversation is admissible rests in the discretion of the trial court."

In Collins v. State, 77 Tex. Cr. Rep. 156, 178 S. W. 345, this court quoted with approval from Encyclopedia of Evidence as follows:

"Voice is a competent means of identification if the witness had any previous acquaintance with the person identified. It is sufficient that the witness has heard such person's voice but once previous to the time in question."

In Streight v. State, 62 Tex. Cr. Rep. 453, 138 S. W. 742, this court held admissible the testimony of the telephone operator who overheard a conversation between the accused and Mrs. Neff. See also Stepp v. State, 31 Tex. Cr. Rep. 349, 20 S. W. 753.

Proposition (1b) is predicated upon the contention that the court erred in admitting the testimony of the telephone operator, because the conversation related was a privileged communication between appellant and his attorney.

As a predicate to a discussion of this question we note that the telephone operator heard this conversation through an act of eavesdropping.

In 20 Am. Juris., p. 361, we find the following:

"Evidence procured by eavesdropping, if otherwise relevent to the issue, is not to be excluded because of the manner in which it was obtained or procured. . . ."

This court has recently, in Schwartz v. State, supra, affirmed by the Supreme Court of the United States on December 15, 1952, authorized the introduction of evidence secured by means of a mechanical interception of a telephone conversation.

We now discuss the question of the privileged nature of the conversation. Wigmore on Evidence (Third Edition), Section 2326, reads as follows:

"The law provides subjective freedom for the client by assuring him of exemption from its processes of disclosure against himself or the attorney or their agents of communication. This much, but not a whit more, is necessary for the maintenance of the privilege. Since the means of preserving secrecy of communication are entirely in the client's hands and since the privilege is a derogation from the general testimonial duty and should be strictly construed it would be improper to extend its prohibition to third persons who obtain knowledge of the communications."

The precise question here presented does not appear to have been passed upon in this or other jurisdictions.

In Hoy v. Morris, 79 Gray's Reports 519, a conversation between a client and his attorney was overheard by Aldrich, who was in the adjoining room. The court therein said:

"Aldrich was not an attorney, not in any way connected with Mr. Todd; and certainly in no situation where he was either necessary or useful to the parties to enable them to understand each other. On the contrary, he was a mere bystander, and casually overheard conversation not addressed to him nor intended for his ear, but which the client and attorney meant to have respected as private and confidential. Mr. Todd could not lawfully have revealed it. But, in consequence of a want of proper precaution, the communications between him and his client were overheard by a mere stranger. As the latter stood in no relation of confidence to either of the parties, he was clearly not within the rule of exemption from giving testimony; and he might therefore, when summoned as a witness, be compelled to testify as to what he overheard, so far as it was pertinent to the subject matter of inquiry upon the trial. . . ."

In Walker v. State, 19 Tex. Ct. of App. Reports 176, we find the following:

"Mrs. Bridges was not incompetent or disqualified because she was present and heard the confessions made by defendant, even assuming that the relation of attorney and client subsisted in fact between him and Culberson."

The above holding is in conformity with our statute, Article 713, C.C.P.

"All other persons, except those enumerated in Articles 708

and 714, whatever may be the relationship between the defendant and witness, are competent to testify, except that an attorney at law shall not disclose a communication made to him by his client during the existence of that relationship, nor disclose any other fact which came to the knowledge of such attorney by reason of such relationship."

Attention is also called to Russell v. State, 38 Tex. Cr. R. 590, 44 S. W. 159.

Appellant relies upon Gross v. State, 61 Tex. Cr. Rep. 176, 135 S. W. 373, wherein we held that a letter written by the accused to his wife remained privileged even though it had fallen into the hands of a third party. We think that such opinion is not authority herein, because therein we said:

"There is a broad distinction between the introduction of conversations overheard by third parties occurring between husband and wife and the introduction of letters written by one to the other, as shown by practically, if not all, the authorities. It is unnecessary to take up or discuss the question as to conversations going on between husband and wife which are overheard by other parties. That question is not in the case, and it is unnecessary to discuss it. We hold that the introduction of the contents of the letter through the witness Mrs. Maud Coleman was inadmissible. It was a privileged communication under the statute, and therefore interdicted. Article 774, Code of Criminal Procedure."

And, further on in the opinion, we find the following:

"Not minimizing the same relation of client and attorney, but we do say that the relation between husband and wife is far more sacred, and to be the more strongly guarded, than that of relation between attorney and client."

We hold that the trial court properly admitted the evidence of the telephone operator.

Proposition (2) relates to the failure of the trial court to charge the jury on the issue of fact as to whether the witness Menchaca was an accomplice witness; he also contends the facts make Menchaca an accomplice witness as a matter of law.

Menchaca was charged in the justice court of Tom Green County by a complaint alleging him to be accessory to appellant

in that he helped him evade arrest for the murder of deceased and aided him in disposing of the murder weapon. The record is silent on the question of the disposition of the aforesaid complaint. While it is true that the pendency at the time of trial of an indictment charging the witness with being an accomplice to the principal on trial would render such witness an accomplice witness as a matter of law (Crissman v. State, 93 Tex. Cr. Rep. 15, 245 S. W. 438), yet such is not true where only a complaint has been filed which has not been shown to have eventuated in an indictment. Harwell v. State, 149 Tex. Cr. Rep. 43, 191 S. W. 2d 36. The witness stated that he stayed in jail a few days. Nothing further was developed. We hold that the witness was not an accomplice as a matter of law.

We now move to an examination of the facts to determine whether the trial court should have submitted the issue to the jury.

The knowledge that an offense has been committed is set forth in the Penal Code as an essential ingredient of the offense of being an accessory. Article 77 P. C. Such knowledge need not be "full perfect and absolute consciousness of all the salient features of the evidence going to show the principal's guilt," but there must be knowledge that an offense has been committed and that the principal committed the same. Dent v. State, 43 Tex. Cr. Rep. 126, 65 S. W. 627.

We have carefully reviewed the testimony of the witness and are impressed with the following facts:

1. The witness had never attended school and was engaged in menial work; he had been the appellant's servant for fourteen years, and he seemed to accept without questioning whatever the appellant told him. We cannot attribute to such a witness the degree of mental alertness that we might another individual. If he knew that an offense had been committed, he knew it only by deduction, because appellant never at any time told him that he had killed his wife. In fact, appellant's conduct, as will be shown below, demonstrates that appellant did not want the witness to know what had transpired, and we feel that he was successful in his efforts.

2. Appellant left him in the automobile when he went to the home of the deceased, and at a distance that would render his hearing any shots improbable.

3. When appellant returned to the automobile, he told the witness that he had had a long talk with his wife.

4. When appellant made the telephone call to his attorney, he did so at a time when he had sent the witness out of the room.

5. When appellant made the subsequent trip, presumably to get rid of the murder weapon, he told the witness he wanted to talk to a friend and left the witness standing on a street corner.

The failure of the witness to disclose what he knew concerning appellant's conduct on the night in question, when first being interrogated by the properly constituted investigating authorities, does not make him an accomplice witness. Tipton v. State, 126 Tex. Cr. Rep. 439, 72 S. W. 2d 290. There is no showing in the case at bar that Menchaca told the authorities anything that was false.

We hold that under the facts of this case the court did not err in refusing to submit the issue to the jury.

Proposition (4) relates to several bills of exception growing out of proof that appellant, while at the home of deceased on the night of the homicide, also assaulted his step-daughter with the intent to murder her.

If there was any error committed, it was an error against the state. The entire transaction, even though it included other offenses, would have been admissible. Sims v. State, 156 Tex. Cr. Rep. 218, 240 S. W. 2d 297, and Salazar v. State, 137 Tex. Cr. Rep. 448, 131 S. W. 2d 761.

Finding no reversible error, the judgment of the trial court is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

WOODLEY, Judge.

We are favored with masterful briefs and arguments in support of appellant's motion for rehearing, including amicus brief by an eminent and able Texas lawyer addressed to the question of privileged communications between attorney and client.

Other grounds for rehearing urged are (1) the refusal of

an affirmative charge requested by appellant on temporary insanity growing out of his domestic trouble, and (2) the failure of the trial court to submit the question to the jury as to whether the witness Menchaca was an accomplice.

These contentions will be considered in reverse of the order in which they are above stated.

Appellant does not now question the correctness of our holding that the mere filing of a complaint against Menchaca in connection with the murder of Mrs. Clark did not make him an accomplice as a matter of law. He insists, however, that the court erred in failing to submit to the jury the question of whether Menchaca was an accomplice.

The charge was not objected to for the failure to submit the issue to the jury, but because the court declined to instruct the jury that Menchaca was an accomplice as a matter of law. But without regard to the sufficiency of the objection, we are unable to agree that the failure of the trial court to submit to the jury the question of whether Menchaca was an accomplice constitutes reversible error.

We recognize the rule advanced by appellant to the effect that where one who has taken part in the commission of an offense endeavors by his own testimony to show his innocent intention, his relation to the crime becomes a question of fact for the jury. But as we view the testimony there is no evidence to show that Menchaca took part in the murder, either as a principal, an accomplice or an accessory. There was therefore no fact situation showing a guilty connection from which Menchaca was called upon to extricate himself by his testimony.

Menchaca was merely the personal attendant or companion of appellant on the night in question, in the capacity of an employee of appellant and of the hotel owned in part by appellant. He was assigned by the hotel manager and by appellant to that role. There is no testimony to show that he knew that the offense of murder was contemplated, planned or executed by appellant. Nor is it shown that he became a party by any act or conduct after the killing. The fact that he remained silent when first questioned as to the whereabouts and activity of appellant on the night in question did not constitute him an accessory.

As to the charge on insanity, the charge as presented to

appellant's counsel contained rather full instructions and definitions on insanity as a defense to crime. Appellant objected to these instructions as being incomplete and requested that in lieu thereof the court substitute his requested charge No. 1.

An examination of appellant's requested charge No. 1 reveals that it does not contain the instruction on temporary insanity "resulting from his worry over his domestic affairs" which is the crux of his present complaint.

Appellant's requested charge No. 4 was given to the jury and reads as follows:

"You are further instructed as a part of the law in this case, that there is no limited time when insanity can exist in the mind of a person which renders said person excusable from an unlawful act, and, so in this case, although you may find and believe from the evidence that the defendant was sane prior to the homicide and sane after the homicide, yet if you believe from all the evidence that the defendant was insane at the very time he killed Laverne Clark, if he did, as the term insanity is defined to you in the Court's main charge, you will acquit him on the grounds of insanity.

"In passing on the question as to whether he was insane at the very time he shot and killed Laverne Clark, if he did, you may take into consideration the acts and conduct of the defendant before the homicide, at the time of the homicide and after the homicide, as pointed out in the Court's main charge."

The contention is advanced that this conviction should be reversed because of the refusal of the court to give appellant's requested charge No. 2, reading as follows:

"You are further instructed as a part of the law in this case, that there is no limited time when insanity should exist in the mind of a person to excuse them from an unlawful act, and, so in this case, if you find and believe by a preponderance of the evidence that although the defendant was sane immediately prior to the homicide and sane immediately after the homicide but was insane, from any knowledge the defendant might have had with reference to the relationship between Laverne Clark and a man or men, if any, *or for any other reason,* as the term insanity is defined in the Court's main charge, at the time he shot and killed Laverne Clark, if he did, then you will acquit him on the grounds of insanity."

We find no exception to the refusal of the requested charges.

We remain convinced that the court amply protected appellant's rights when he gave his requested charge No. 4 instructing the jury to acquit if they believed "from all of the evidence that the defendant was insane at the very time of the killing, even though they found him to have been sane prior to and after the homicide."

We are not impressed with the argument regarding the instruction found elsewhere in the charge regarding temporary insanity from the recent voluntary use of intoxicating liquor.

There are no exceptions to the charge upon the ground that it was "a conglomeration and was not a clear and affirmative charge" nor that it was vague or indefinite or "calculated to confuse and mislead the jury," which are the complaints now advanced. In fact we find no objection to the submission of temporary insanity caused by the use of intoxicating liquor in mitigation of the punishment and for ought we know the instruction may have been given at appellant's suggestion or request. At any rate, the instructions are separate and distinct, and not confusing.

The sole ground of objection to the court's charge on insanity was that it was incomplete and failed to instruct the jury that insanity may be continuous or may be "periodical." The objections might be disposed of because it is not shown that they were timely presented or that an exception was reserved. The record shows that defendant "excepts to the court's main charge" and bears the notation "Overruled," over the signature of the judge, but no exception appears to the court's action in overruling the objections.

Because of the punishment assessed we have, both here and on original submission, considered and discussed the contentions raised. However we direct attention to the fact that the law regarding the reserving of exceptions applies to all appeals to this court, including convictions carrying the death penalty.

We remain convinced that no reversible error is shown in the court's instructions to the jury.

As to the testimony of the telephone operator regarding the conversation between appellant and Mr. Martin, the con-

versation is set forth in full in our original opinion. Our holding as to the admissibility of the testimony of the operator is not to be considered as authority except in comparable fact situations.

For the purpose of this opinion we assume that the Dallas voice was that of Mr. Martin, appellant's attorney. If it was not appellant's attorney the conversation was not privileged.

It is in the interest of public justice that the client be able to make a full disclosure to his attorney of all facts that are material to his defense or that go to substantiate his claim. The purpose of the privilege is to encourage such disclosure of the facts. But the interests of public justice further require that no shield such as the protection afforded to communications between attorney and client shall be interposed to protect a person who takes counsel on how he can safely commit a crime.

We think this latter rule must extend to one who, having committed a crime, seeks or takes counsel as to how he shall escape arrest and punishment, such as advice regarding the destruction or disposition of the murder weapon or of the body following a murder.

One who knowing that an offense has been committed conceals the offender or aids him to evade arrest or trial becomes an accessory. The fact that the aider may be a member of the bar and the attorney for the offender will not prevent his becoming an accessory.

Art. 77 P.C. defining an accessory contains the exception "One who aids an offender in making and preparing his defense at law" is not an accessory.

The conversation as testified to by the telephone operator is not within the exception found in Art. 77 P.C. When the Dallas voice advised appellant to "get rid of the weapon" (which advice the evidence shows was followed) such aid cannot be said to constitute aid "in making and preparing his defense at law." It was aid to the perpetrator of the crime "in order that he may evade an arrest and trial."

Is such a conversation privileged as a communication between attorney and client?

If the adviser had been called to testify as to the conversation, would it not have been more appropriate for him to claim his privilege against self-incrimination rather than that the communication was privileged because it was between attorney and client?

Appellant, when he conversed with Mr. Martin, was not under arrest nor was he charged with a crime. He had just inflicted mortal wounds on his former wife and apparently had shot her daughter. Mr. Martin had acted as his attorney in the divorce suit which had been tried that day and had secured a satisfactory property settlement. Appellant called him and told him that he had gone to extremes and had killed "her," not "the driver." Mr. Martin appeared to understand these references and told appellant to get rid of "the weapon."

We are unwilling to subscribe to the theory that such counsel and advice should be privileged because of the attorney-client relationship which existed between the parties in the divorce suit. We think, on the other hand, that the conversation was admissible as not within the realm of legitimate professional counsel and employment.

The rule of public policy which calls for the privileged character of the communication between attorney and client, we think, demands that the rule be confined to the legitimate course of professional employment. It cannot consistent with the high purpose and policy supporting the rule be here applied.

The murder weapon was not found. The evidence indicates that appellant disposed of it as advised in the telephone conversation. Such advice or counsel was not such as merits protection because given by an attorney. It was not in the legitimate course of profesisonal employment in making or preparing a defense at law.

Nothing is found in the record to indicate that appellant sought any advice from Mr. Martin other than that given in the conversation testified to by the telephone operator. We are not therefore dealing with a situation where the accused sought legitimate advice from his attorney in preparing his legal defense.

Some of the citations and quotations have been deleted from our original opinion.

We remain convinced that the appeal was properly disposed of on original submission.

Appellant's motion for rehearing is overruled.