**Paula Jo Ann WILSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–85–046–CR.**

Court of Appeals of Texas, Texarkana.

Jan. 14, 1986.

Rehearing Denied Feb. 11, 1986.

James E. Davis, Texarkana, for appellant.

Charles M. Cobb, Dist. Atty. of Camp County, Mount Pleasant, for appellee.

GRANT, Justice.

Paula Jo Ann Wilson appeals her conviction of attempted murder. She contends that the trial court erred in admitting testimony by the witness Tina Denman that Wilson had previously stated to Denman, "One of these days I am going to shoot the son of a bitch." Wilson contends that the statement was inadmissible because it was improperly used to impeach her, because the statement was privileged under Tex. Code Crim.Proc.Ann. art. 38.10 (Vernon Supp.1986), and because no proper predicate was laid.

Wilson was charged with shooting her exhusband in the face with a shotgun. The shooting occurred following an argument between the defendant and her exhusband over visitation of Wilson by their son, Kevin. Though Wilson pled not guilty, she did not deny that she shot Cox, but stated that she could not remember the shooting.

The statement in question was allegedly made in the office of the district attorney of Titus County in the summer of 1981, approximately nine months before the shooting. At that time, the Titus County district attorney was representing Wilson in an action against Cox to collect back child support. Tina Denman, an employee of the district attorney's office, testified that Wilson was in the office many times, but not always for a specific purpose. Denman testified that sometimes Wilson's visits were just for "friendly conversation". According to Denman's testimony, it was during one of these "friendly conversations" that Wilson made the statement that, "One of these days I am going to shoot the son of a bitch."

Wilson complains that the use of this statement was privileged under Article 38.-10 which reads as follows:

Art. 38.10. *All other competent witnesses.*

All other persons, except those enumerated in Articles 38.06, 38.101, 38.11, and 38.111, whatever may be the relationship between the defendant and witness, are competent to testify, except that an attorney at law shall not disclose a commu-nication made to him by his client during the existence of that relationship, nor disclose any other fact which came to the knowledge of such attorney by reason of such relationship.

The privilege as to communications between attorney and client could extend to Tina Denman as a person who was a media of communication between Wilson and the district attorney. *Burnett v. State*, 642 S.W.2d 765 (Tex.Crim.App.1982).

Denman described the conversation as "[J]ust woman to woman, it was purely—had nothing to do with you [referring to the district attorney] or the office or her civil charges or civil action or anything, it was just the two of us talking."

■■■ The statement made by Wilson does not seem directly related to the child support action being brought by the district attorney's office, and thus is not the confidential type of communication covered by Article 38.10. However, even if it could be construed to relate to Wilson's representation, the conversation related to the commission of a future crime is not covered by the attorney-client privilege. *Clark v. State*, 159 Tex.Crim.R. 187, 261 S.W.2d 339, *cert. denied* 346 U.S. 855, 74 S.Ct. 69, 98 L.Ed. 369, *reh. denied* 346 U.S. 905, 74 S.Ct. 217, 98 L.Ed. 404 (1953).

■■ Wilson further contends that the statement was made jokingly at least nine months prior to the occurrence in question, and therefore cannot be used to impeach her denial that she ever threatened to kill her exhusband. What is sometimes construed to be said in jest may be meant in earnest, and it was for the jury to decide between jest and earnest. In the case of *Lowe v. State*, 163 Tex.Cr.R. 578, 294 S.W.2d 394 (1956), the court held that a threat made approximately one year prior to the offense charged was admissible; therefore, the nine-month interval in this case would not render the statement too remote to be considered.

■■ Wilson also asserts that the State failed to lay the proper predicate for impeachment under the guidelines of *Huff v.*

*State,* 576 S.W.2d 645 (Tex.Crim.App.1979). Even if the State failed to lay its predicate with the proper specificity,[1] no objections were made at the time of the introduction of the statement, and therefore any error was waived. *Boulware v. State,* 542 S.W.2d 677 (Tex.Crim.App.1976); *Shumake v. State,* 502 S.W.2d 758, 761 (Tex.Crim. App.1973).

The statement was admissible without having to apply the impeachment exception. Intent was an essential element of the crime charged and state of mind statements looking into the future are admissible for proving intent. Where the commission of the criminal act by the defendant is an issue, the fact that the defendant threatened such an act before the deed, is relevant to whether or not the defendant did the act. The requirements are that the threat be sufficiently specific and not too remote in time. 1A R. Ray, *Texas Law of Evidence Civil and Criminal* § 871 (Texas Practice 3rd ed. 1980). We have already found that the threat was not too remote in time, and the threat specifically referred to the victim in this case. Therefore, it met the criteria for admissibility.

The judgment of the trial court is affirmed.

---

1. Wilson testified at one point that she did not remember making the statement in question, and at another point she denied she ever told Tina Denman that she was going to shoot her exhusband.